EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Asociación de Condómines Quadrangle Medical Center, G & L Investment, S.E. Demandante-Recurrido v. Eduardo Ramírez Lizardi Demandado-Recurrente | Certiorari 2001 TSPR 111 154 DPR ____ |

Número del Caso: CC-2000-355

Fecha: 19/julio/2001

Tribunal de Circuito de Apelaciones:
Circuito Regional VI

Juez Ponente:
Hon. Andrés E. Salas Soler

Abogado de la Parte Peticionaria:
Lcdo. Luis Ramón Rodríguez Cintrón

Abogado de la Parte Recurrida:
Lcdo. Luis F. Ferrer Díaz

Materia: Propiedad Horizontal

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Asociación de Condómines
Quadrangle Medical Center,
G&L Investment, S.E.

    Demandante-recurrido

    v.                          CC-2000-355        CERTIORARI

Eduardo Ramírez Lizardi

    Demandado-recurrente

OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 19 de julio de 2001

El Condominio Quadrangle Medical Center (Condominio) consiste de un edificio de tres pisos, el cual fue sometido al régimen de propiedad horizontal mediante la escritura pública número 50, otorgada el 20 de junio de 1991, ante el notario Jorge Puig. El primer piso está constituido por ocho (8) locales dedicados a actividades comerciales. El segundo y tercer piso contienen, cada uno, nueve (9) locales de oficina.

El 6 de junio de 1997, el Presidente del Consejo de Titulares del Condominio recibió una carta de G & L Investment, S.E., dueña de las oficinas número 208 y 209 de dicho Condominio, en donde ésta solicitó la venta de un área de sobreelevación de 925 pies cuadrado al                            norte                         del

Condominio con el propósito de construir un área de oficina para ser agrupada a la oficina número 209. En consideración a ello, G & L Investment, S.E. construiría un área de 540 pies cuadrados, a ser dedicado como elemento común del Condominio en el sobreelevado correspondiente al tercer piso, lado Norte del Condominio, para ser utilizado como Salón de Actividades o de Conferencias.

A los fines de discutir el asunto antes indicado, el 29 de agosto de 1997, el Presidente del Consejo de Titulares del Condominio, señor Guillermo Ramírez, convocó por escrito a una reunión extraordinaria del Consejo de Titulares a ser celebrada el 2 de octubre de 1997. Dicha convocatoria fue notificada a todos los titulares con treinta (30) días de antelación, y en la misma se detalló el asunto a tratarse y se advirtió que los titulares que adeudaran 3 ó más plazos de cuota de mantenimiento quedaban privados de ejercer su derecho al voto en las reuniones y asambleas hasta tanto satisficieran las mismas. Además, a la referida convocatoria, se anejó copia de la carta suscrita por G & L Investment, S.E., al Presidente y los planos de la propuesta.

La reunión extraordinaria se celebró el 2 de octubre de 1997. A la misma asistió el 80.36% de los titulares con derecho al voto y el 12.36% envió proxy, para un total de 92.76%. El porcentaje de titulares ausentes fue de 7.28%. En dicha reunión fue presentada, y aprobada por unanimidad de los presentes, la propuesta de G & L Investment, S.E. La resolución a esos efectos fue notificada personalmente a los titulares ausentes el 7 de octubre de 1997. Además, en dicha notificación se les apercibió a éstos que, de no manifestar por escrito su discrepancia a la resolución aprobada en la reunión extraordinaria dentro del término de treinta (30) días, quedarían vinculados a la misma.

De los titulares que no asistieron a la reunión extraordinaria, el único que manifestó su oposición a la referida resolución fue el señor Eduardo Ramírez Lizardi, quien mediante carta de 29 de octubre de 1997, indicó lo siguiente:

> "La presente es para informarle que me opongo a la venta del área de sobreelevación de 925 pies cuadrados al lado Norte del Condominio Quadrangle Medical Center, apartados 4 y 5 de su carta enviada el 10 de octubre de 1997."

Posteriormente, el 31 de octubre de 1997, el Presidente del Consejo de Titulares le informó por escrito al señor Ramírez Lizardi que, a tenor con el Reglamento y la Ley de Propiedad Horizontal, los titulares que adeudan tres o más plazos mensuales consecutivos de su cuota de mantenimiento, quedan temporalmente privados de ejercer su derecho al voto en las reuniones del Consejo de Titulares hasta tanto satisfagan las deudas en su totalidad; que al momento de la reunión éste adeudaba $3,325.00 por concepto de doce (12) plazos mensuales de cuota de mantenimiento, una derrama especial y la cuota del seguro del edificio, lo que lo descalificaba para votar respecto a la cuestión en controversia; y que, para futuras ocasiones, de estar interesado en participar, tenía que pagar sus cuotas de mantenimiento.

Posteriormente, el Consejo anunció la venta del área de sobreelevación. Ante la advertencia de que el señor Ramírez Lizardi acudiría a los tribunales, la Asociación de Condóminos presentó demanda sobre sentencia declaratoria ante el Tribunal de Primera Instancia, Sala Superior de Caguas, en contra de éste, su esposa Lucila Rodríguez Cruz y la sociedad de gananciales compuesta por éstos. El señor Ramírez Lizardo presentó una moción de desestimación. En la misma, alegó que la parte demandante carecía de legitimación activa para presentar la causa de acción.

Luego de varios trámites procesales, el 20 de agosto de 1998, el tribunal de instancia emitió resolución mediante la cual declaró sin lugar la moción de desestimación. Posteriormente, el 12 de julio de 1999, el referido foro emitió sentencia declaratoria. En la misma, resolvió que, por el señor Ramírez Lizardi adeudar más de tres plazos consecutivos de cuota de mantenimiento, éste no tenía derecho al voto conforme las disposiciones de la Ley de Propiedad Horizontal y el Reglamento del Condominio, y por consiguiente, la resolución acordada por el Consejo de Titulares había sido aprobada por unanimidad, conforme a la citada Ley de Propiedad Horizontal y al Reglamento del Condominio, por lo que todos los titulares quedaron atados por la misma. Denegada su solicitud de determinaciones de hecho y conclusiones de derecho adicionales, el 5 de noviembre de 1999, el señor

Ramírez Lizardi acudió mediante recurso de apelación ante el Tribunal de Circuito de Apelaciones.[1]

Evaluado los argumentos de las partes, el 14 de febrero de 2000, el foro apelativo intermedio emitió sentencia confirmando la emitida por el tribunal de instancia. En síntesis, resolvió dicho foro que el requisito de consentimiento unánime contenido en la Ley de Propiedad Horizontal se refiere al consentimiento de los titulares con derecho al voto; y que, al momento de aprobarse la resolución objeto de este litigio, el señor Ramírez Lizardi adeudaba cuotas de mantenimiento, perdiendo, así, la capacidad para aprobar o desaprobar obras.

Luego de presentar una moción de reconsideración ante el foro apelativo y de haber sido denegada la misma, oportunamente, el 18 de abril de 2000, el señor Ramírez Lizardi acudió ante este Tribunal mediante recurso de *certiorari*. En el mismo, señaló que:

> Erró el Honorable Tribunal de Circuito de Apelaciones al resolver que bajo el régimen de propiedad horizontal el voto y el consentimiento son sinónimos.

El 2 de junio de 2000, expedimos el recurso. Estando en posición de resolver el mismo, procedemos a así hacerlo.

I

En síntesis, la parte recurrente señala que el consentimiento unánime para disponer de un elemento común requiere el consentimiento de todos los titulares del inmueble, incluyendo aquéllos que adeuden tres (3) o más plazos consecutivos de cuotas de mantenimiento. Arguye que los elementos comunes de un edificio sometido al régimen de propiedad horizontal pertenecen pro indiviso a todos lo titulares, y, como tal, se requiere el consentimiento de todos para disponer de los mismos.

Por otro lado, la parte recurrida sostiene que, el Artículo 39 de la Ley de Propiedad Horizontal, al disponer que el titular que adeude tres o más plazos consecutivos de cuotas de mantenimiento quedará temporalmente privado de su derecho al voto, conlleva la consecuencia de que el titular

---

[1] En el mismo, adujo que erró el tribunal de instancia al resolver que "se puede soslayar el consentimiento de uno de los titulares para disponer del sobreelevado de un inmueble sometido al régimen de propiedad horizontal".

moroso pierde su derecho al voto en <u>todo asunto</u> presentado ante el Consejo de Titulares para votación, bien sea uno que requiera mayoría o unanimidad.

## II

Comenzamos nuestro análisis examinando, brevemente, algunos principios de hermenéutica legal. En reiteradas ocasiones hemos señalado, como principio rector en materia de hermenéutica, que "al interpretar una disposición específica de una ley, los tribunales deben siempre considerar cuáles fueron los propósitos perseguidos por la Asamblea Legislativa al aprobarla y nuestra determinación debe atribuirle un sentido que asegure el resultado que oriaginalmente se quiso obtener". (Citas omitidas) <u>Chase Manhattan Bank</u> v. <u>Mun. de San Juan</u>, 126 D.P.R. 759 (1990). Véanse: R. Elfrén Bernier y José A. Cuevas Segarra, <u>Aprobación e Interpretación de las Leyes en Puerto Rico</u>, 2da ed., 1987, pág. 245; <u>Vázquez</u> v. <u>A.R.P.E.</u>, 128 D.P.R. 513 (1991); <u>Dorante</u> v. <u>Wrangler of P.R.</u>, res. el 27 de abril de 1998, 98 TSPR 50; <u>García</u> v. <u>E.L.A.</u>, res. el 13 de octubre de 1998, 98 TSPR 131. Nuestra obligación consiste en imprimirle efectividad a la intención del legislador, para así garantizar que se cumpla con el propósito para el cual fue creada la medida. <u>Vázquez</u> v. <u>A.R.P.E.</u>, ante.

Con el fin de cumplir con esta obligación, inicialmente debemos atender el texto de la ley; en otras palabras, y conforme establece el Artículo 14 del Código Civil, cuando "...la ley es clara y libre de toda ambigüedad, la letra de ella no debe ser menospreciada bajo el pretexto de cumplir con su espíritu". 31 L.P.R.A. sec. 14.

## III

En Puerto Rico existe una clara política pública en favor de la utilización de edificios multipisos sometidos al Régimen de Propiedad Horizontal como unidades de vivienda. <u>Soto Vázquez</u> v. <u>Vázquez Torres</u>, 138 D.P.R. 282 (1995). En la consecución de dicha política pública, hemos establecido que la interpretación de la Ley de Propiedad Horizontal debe ser "constructiva e imaginativa". <u>Castle Enterprises Inc.</u> v. <u>Registrador</u>,

87 D.P.R. 775 (1963). Dicha interpretación debe ajustarse a la esencia de la horizontalidad: la coexistencia de diversos pisos de dominio exclusivo con el condominio forzoso e inescapable de elementos comunes. Consejo de Titulares del Condominio McKinley Court v. Salvador Rullán et als., 126 D.P.R. 387 (1990).

El Artículo 36 de la Ley de Propiedad Horizontal dispone que:

> "La administración de todo inmueble constituido en propiedad horizontal se regirá por lo dispuesto en este Capítulo, y además por un reglamento que deberá insertarse en la escritura de su constitución, o que se agregará a dicha escritura. Copia certificada de dicha escritura y el reglamento, y de toda enmienda a los mismos, deberá quedar archivada en el registro de la propiedad." 31 L.P.R.A. sec. 1293

En lo pertinente a la cuestión aquí en controversia, la Ley de Propiedad Horizontal, en su Artículo 15(e), 31 L.P.R.A. sec. 1291m(e), establece que todo titular deberá contribuir, con arreglo al porcentaje de participación fijado a su apartamiento en la escritura de constitución, a los gastos comunes para el adecuado sostenimiento del inmueble, sus servicios, tributos, cargas y responsabilidades. Igualmente, el Artículo 39, 31 L.P.R.A. sec. 1293c, dispone, en lo pertinente, que "[l]os titulares de los apartamientos están obligados a contribuir proporcionalmente a los gastos para la administración, conservación y reparación de los elementos comunes generales del inmueble y, en su caso, de los elementos comunes limitados, así como a cuantos más fueren legítimamente acordados". Dispone, además, el citado Artículo 39 que "[n]ingún titular podrá librarse de contribuir a tales gastos por renuncia al uso o disfrute de los elementos comunes, ni por abandono del apartamiento que le pertenezca".

En ocasiones anteriores, nos hemos expresado sobre la función e importancia que tienen las cuotas de mantenimiento en un inmueble sometido al régimen de la propiedad horizontal. En ese respecto, señalamos en Maldonado v. Consejo de Titulares, 111 D.P.R. 427 (1981) que:

> "Las cuotas que los titulares vienen obligados a satisfacer son precisamente para preservar las mejores condiciones de los elementos comunes, facilitar su uso y, sobre todo, garantizar el buen funcionamiento del régimen. Sin la aportación proporcional a las expensas del inmueble el régimen no puede sobrevivir y se derrotaría la política pública al respecto."

Además, el Artículo 41 de la Ley de Propiedad Horizontal dispone que la obligación del titular de aportar a los gastos comunes constituye un gravamen sobre dicho apartamiento. 31 L.P.R.A. sec. 1293c.

De lo antes transcrito, resulta obvio que el Legislador le concedió particular atención a la obligación de los condóminos de aportar a las cuotas de mantenimiento, estableciendo determinadas consecuencias al incumplimiento de dicha obligación.

Entre las consecuencias de dicho incumplimiento, el antes citado Artículo 39 de la Ley de Propiedad Horizontal establece que:

> "...Aquellos [titulares] que adeuden tres (3) o más plazos consecutivos, quedarán temporalmente privados de ejercer su derecho al voto en las reuniones del Consejo de Titulares hasta tanto satisfagan las deudas en su totalidad."
> 31 L.P.R.A. sec. 1293c.

IV

No obstante lo anterior, en el caso ante nuestra consideración se pretende <u>disponer</u> de un área de sobreelevación sin tomar en consideración el consentimiento del Sr. Ramírez Lizardi, por éste adeudar más de tres plazos consecutivos de la cuota de mantenimiento.

La sobreelevación es el <u>derecho a utilizar el vuelo para elevar la edificación</u>.[2] <u>Costa Linda, Inc.</u> v. <u>Registrador</u>, 109 D.P.R. 861, 869 (1980). Véase también <u>Alvarez Figueredo</u> v. <u>González Lamela</u>, 138 D.P.R. 958, 962 (1995). La misma ha sido reservada a los condóminos como un derecho comunal, del cual solamente podrán disponer <u>mediante acuerdo unánime</u>, ello de conformidad con el Artículo 18 de la ley. *Id.*

Este último artículo dispone que "[n]ingún titular podrá, sin el <u>consentimiento unánime</u> de los otros, construir nuevos pisos, hacer sótanos o excavaciones, o realizar obras que afecten a la seguridad, solidez y conservación del edificio". 31 L.P.R.A. sec. 1291p. Por su parte, el Artículo 16 también exige el <u>consentimiento unánime</u> de los titulares para realizar

---

[2] Dicho concepto no debe confundirse con el vuelo, el cual es un <u>elemento común general</u> del edificio, como lo son el terreno, los cimientos, los sótanos, etc. <u>Costa Linda, Inc.</u> v.

cualquier obra que <u>afecte</u> los elementos comunes. 31 L.P.R.A. sec. 1291n. A estos efectos, "[p]or afectar debe entenderse aquello que menoscaba, amenaza o disminuye la efectividad o el valor de un elemento común". Michel J. Godreau, <u>El Condominio</u>, Editorial Dictum, 1992, pág. 128.

En esencia, las decisiones donde se exige la unanimidad de los condóminos son aquellas "de especial envergadura y en la[s] que se verían afectados los <u>intereses fundamentales de cualquier propietario</u>".  Michel J. Godreau, ante, pág. 117. Ello en consideración a que cada titular es <u>dueño</u> de una cuota indivisa sobre los elementos comunes. Michel J. Godreau, ante, p. 147.

Adviértase que bajo nuestro sistema jurídico, el derecho de cada persona a disfrutar de su propiedad es uno de suma importancia. El mismo, aunque no es absoluto, goza de rango constitucional. Véase <u>Aner Investment Corp. v. Junta de Planificación</u>, res. el 29 de abril de 1999, 99 TSPR 65, pág. 983. En este sentido, el Artículo II, Sección 7 de nuestra Constitución reconoce expresamente como derecho fundamental del ser humano el derecho al disfrute de la propiedad. Por su parte, el Artículo 282 del Código Civil establece que "<u>[n]adie podrá ser privado de su propiedad</u> sino por autoridad competente, por causa justificada de utilidad pública o beneficio social, y mediante el pago de una justa compensación que se fijará en la forma provista por ley". 31 L.P.R.A. sec. 1113.

No hay duda de que el pago de las cuotas de mantenimiento es esencial para el funcionamiento del régimen de propiedad horizontal. Sin embargo, su incumplimiento no puede dar base a que se prive de forma absoluta a un titular de su derecho de propiedad sobre los elementos comunes, pues el mismo goza de mayor jerarquía. En fin, el incumplimiento del pago de la cuota de mantenimiento por tres meses o más consecutivos, no puede tener el efecto de privar a los titulares de su derecho a votar <u>en aquellas decisiones donde está envuelto su derecho de propiedad, para lo cual se exige el</u>

---

<u>Registrador</u>, 109 D.P.R. 861, 869 (1980); 31 L.P.R.A. sec. 1291i(a).

consentimiento unánime, ya que tales decisiones afectan intereses fundamentales de los titulares.[3]

Tal resultado no deja desprovisto al Consejo de Titulares de remedios para cobrar las cuotas de mantenimiento adeudadas, pues, excepto en las situaciones antes señaladas, los titulares estarán impedidos de ejercer su derecho al voto. Además, la Ley de Propiedad Horizontal le concede la facultad al Consejo para suspender los servicios de agua potable, electricidad, gas y teléfono, entre otros, cuando el suministro de éstos llega por medio de instalaciones que constituyen elementos comunes generales del inmueble. 31 L.P.R.A. sec. 1293c.

Asimismo, dicho estatuto clasifica esta obligación como un crédito preferente e impone un gravamen sobre el apartamiento del titular, convirtiendo así en deudor solidario al adquirente voluntario. 31 L.P.R.A. secs. 1293d, 1293e. Por último, la Ley crea otros mecanismos sumarios relacionados con el cobro de la deuda. Véanse Godreau p. 164; 31 L.P.R.A. sec. 1293c.[4] Ninguno de estos remedios interfiere de forma irrazonable con

---

[3] En otras palabras, la disposición contenida en la Ley de Propiedad Horizontal, que permite que se prive del derecho al voto al condómino moroso aplica fundamentalmente en aquellas situaciones relativas a asuntos administrativos o de conservación de las áreas comunes del inmueble.

[4] En lo aquí pertinente, esta medida dispone:

> "La deuda de un titular por concepto de gastos comunes hasta la suma de quinientos (500) dólares o hasta la cantidad que represente la falta de pago de no más de seis (6) plazos, le podrá ser reclamada judicialmente con arreglo al procedimiento abreviado dispuesto bajo la Regla 60 de las de Procedimiento Civil de 1958, según enmendadas.
>
> Cuando se reclame la deuda por la vía judicial, el tribunal, a instancias del demandante, decretará el embargo preventivo de los bienes del deudor o deudores, sin otro requisito que la presentación de una certificación jurada por el Presidente y por el Secretario del Consejo de Titulares, ante un notario público u otro funcionario autorizado para tomar juramentos, en que conste el acuerdo que aprobó el gasto exigible y su cuantía, así como la gestión de requerimiento de pago a que se refiere el párrafo cuarto anterior.

el derecho de propiedad de los titulares, y a su vez garantiza el cumplimiento de los propósitos del régimen de propiedad horizontal; esto es:

> "... facilitar la convivencia entre los titulares de un inmueble, sin que se intervenga indebidamente con los derechos individuales de los demás, [...] [creando] un balance delicado con unas <u>reglas mínimas</u> para el uso y disfrute de cada apartamiento. [...] Aunque estas reglas mínimas propician la convivencia y armonía entre los titulares, su propósito 'no es establecer un sistema comunitario, sino viabilizar la propiedad individualizada de los apartamentos'". (Cita omitida.) <u>Junta Dir. Cond. Montebello</u> v. <u>Torres</u>, 138 D.P.R. 150, 154 (1995).

V

En el caso de autos, y como indicáramos anteriormente, <u>no</u> se trata de una mera medida administrativa; se trata de la facultad para disponer de un elemento común a favor de una persona particular. Por consiguiente, concluimos que el señor Ramírez Lizardi, como titular de los elementos comunes, e independientemente del hecho de que éste adeudara más de tres meses de cuota de mantenimiento, <u>tenía derecho a votar en los actos dispositivos de dichos elementos</u>.

En vista a ello, y de que el señor Ramírez Lizardi presentó su oposición a la venta del área común a favor de G & L Investment, S.E., dentro del término que tenía para ello, resulta forzoso concluir que no se obtuvo la unanimidad requerida por la Ley de Propiedad Horizontal <u>para disponer de dicho elemento común</u>; razón por la cual procede decretar la <u>revocación</u> de la sentencia emitida en el presente caso por el Tribunal de Circuito de Apelaciones.[5]

Se dictará Sentencia de conformidad.

---

Cuando el demandante así lo solicitare, en aquellos casos en que el titular moroso hubiere arrendado el apartamiento, el tribunal podrá ordenar al arrendatario que consigne judicialmente a favor del Consejo de Titulares, la cantidad total por concepto de cánones de arrendamiento, según éstos vayan venciendo, hasta que se cubra totalmente la deuda del titular".

[5] No obstante el resultado al cual llegamos, consideramos que la negativa de un titular en aquellos casos donde se requiere consentimiento unánime no puede ser arbitraria y caprichosa. Al respecto, Michel J. Godreau ha expresado: "El Consejo de Titulares que se enfrenta a una negativa caprichosa de un solo titular o de un pequeño grupo debe tener abiertas las puertas

**FRANCISCO REBOLLO LÓPEZ**
**Juez Asociado**

---

ante el foro competente para cuestionar tal negativa." Godreau, pág. 125.

**EN EL TRIBUNAL SUPREMO DE PUERTO RICO**

**Asociación de Condómines
Quadrangle Medical Center,
G&L Investment, S.E.**

      **Demandante-recurrido**

        **v.**              **CC-2000-355**      **CERTIORARI**

**Eduardo Ramírez Lizardi**

      **Demandado-recurrente**

**SENTENCIA**

**San Juan, Puerto Rico, a 19 de julio de 2001**

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia revocatoria de la emitida en el presente caso por el Tribunal de Circuito de Apelaciones, Circuito Regional VI.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri emitió Opinión Disidente a la cual se unen los Jueces Asociados señora Naveira de Rodón y señor Hernández Denton.

                **Isabel Llompart Zeno
                   Secretaria del Tribunal Supremo**

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Asoc. de Condómines Quadrangle
Medical Center, G & L Investment
S.E.

        Recurrido

                                    CC-2000-355      Certiorari

            vs.


Eduardo Ramírez Lizardi

        Recurrente


Opinión Disidente emitida por el Juez Asociado señor FUSTER BERLINGERI, a la cual se unen la Juez Asociada señora NAVEIRA DE RODÓN y el Juez Asociado señor HERNÁNDEZ DENTON.

        San Juan, Puerto Rico, a 18 de julio de 2001.


        El caso de autos presenta una de esas situaciones excepcionales que requieren la intervención judicial para realizar lo que Castán Tobeñas ha denominado la **interpretación reconstructiva** del Derecho.[6] La controversia ante nuestra consideración es susceptible de ser resuelta al amparo de alguno de los dos distintos esquemas normativos de derecho positivo que podrían ser aplicables. Estos dos esquemas llevan a resultados contrarios, y le compete a este Foro decidir cuál debe regir en el caso de autos. Para escoger cuál de dichos esquemas debe aplicarse

---

        [6] José Castán Tobeñas, La Formulación Judicial del Derecho (1954), págs. 25-27.

a la controversia ante nos, nuestras miras deben orientarse por el trasfondo de convicciones sociales vigentes que enmarcan el orden jurídico en vigor. Veamos.

I

En el caso de autos, un condómine que tenía múltiples y numerosas deudas con el régimen de propiedad horizontal del edificio donde ubica su residencia, fue descalificado por el Consejo de Titulares para votar con respecto a una propuesta para utilizar una parte del sobreelevado de dicho inmueble para construir como elemento común un Salón de Actividades para todos los condómines, y una oficina privada para el condómine que construiría dicho Salón. La controversia ante nos es si tal descalificación fue válida.

Como bien surge de la propia opinión de la mayoría del Tribunal, existen dos esquemas normativos que podrían ser aplicables para resolver la controversia en cuestión. Por un lado, están las disposiciones relativas a la fundamental obligación de todo condómine de aportar lo que le corresponda a los gastos comunes del régimen, que incluyen la norma de que los condómines muy morosos en el pago de lo que les toca aportar pierden temporalmente el derecho a ejercer su voto en las deliberaciones del Consejo de Titulares. Por otro lado, están las disposiciones relativas al derecho de propiedad de los condómines sobre los elementos comunes del inmueble, en especial la que requiere el consentimiento unánime de dichos condómines para que se puedan afectar los elementos comunes referidos. Lo que nos toca decidir, en esencia, es cuál de estos dos esquemas normativos debe hacerse valer para resolver la controversia de si el condómine que es deudor muy moroso podía ser privado de su voto con respecto a la propuesta utilización de parte del área de sobreelevación del inmueble, que es uno de sus elementos comunes.

La mayoría del Tribunal opta por hacer valer el esquema normativo relativo al derecho de propiedad del condómine, por entender que este derecho "goza de mayor jerarquía" que el deber fundamental del condómine de aportar a los gastos comunes. **Sin embargo, la mayoría no explica de ningún modo claro o adecuado por qué es que tal esquema tiene la supuesta "mayor jerarquía"**. Por un lado, se alude a que el derecho a la propiedad tiene "rango constitucional." Pero la mayoría en su opinión no examina de modo alguno el incontestable dato jurídico de que en la actualidad el derecho a la propiedad, aun con su "rango constitucional", dista mucho de ser el preeminente derecho que era antes, porque ha cedido ante la concepción jurídica moderna según la cual dicho derecho está sujeto a las muchas limitaciones que surgen del "más importante valor social que constituye la seguridad, salud y bienestar general de la comunidad." E.L.A. v. Márquez, 93 D.P.R. 393 (1966). En efecto, ya hemos resuelto expresamente que cuando un inmueble se encuentra voluntariamente sometido al régimen de la propiedad horizontal, el derecho de propiedad no tiene la misma amplitud ni el mismo alcance que el dominio tiene en el Código Civil. Soto Vázquez v. Vázquez Torres, 138 D.P.R. 282, 289 (1995).

Por otro lado, se alega que la privación temporal del derecho al voto en las deliberaciones del Consejo de Titulares de los condómines que son deudores muy morosos supuestamente aplica

fundamentalmente sólo a los "asuntos administrativos" del régimen. Pero tal aseveración de la mayoría en su opinión no es sostenible a la luz del claro lenguaje del Art. 38 de la Ley de Propiedad Horizontal, 31 L.P.R.A. 1293b, que expresamente le otorga al Consejo de Titulares la facultad, entre otras, para:

. . .

(d) Aprobar la ejecución de obras extraordinarias y mejoras y recabar fondos para su realización. . .

. . .

(g)  Entender y decidir en los demás asuntos de interés general para la comunidad y acordar las medidas necesarias y convenientes para el mejor servicio común.

. . .

Parecería, más bien, que a la luz de las facultades referidas la propuesta en cuestión en el caso de autos era un asunto propio del Consejo de Titulares, por tratarse precisamente de una obra extraordinaria y del modo de obtener fondos para su realización, todo ello para el mejor servicio común.[7] El Consejo de Titulares tenía la autoridad para considerar y decidir sobre dicha propuesta, que no era de ningún modo un mero "asunto administrativo". Es evidente que la limitación al poder del voto de los condómines deudores con respecto a las deliberaciones del Consejo de Titulares en casos como el de autos es una más de esas restricciones al derecho a la propiedad que modernamente el Estado le impone en beneficio del bienestar general. Goldblatt v. Town of Hempstead, 369 US 590 (1962); Texaco Inc. v. Srio. de Obras Públicas, 85 D.P.R. 712, 722 (1962); Roselló Hmnos. v. Figueroa, 78 D.P.R. 261, 273 (1955).

Más aun, la mayoría en su opinión no da suficiente peso a la naturaleza propia del régimen de la propiedad horizontal. Dicho régimen ha tomado arraigo en Puerto Rico por su utilidad para atender las cambiantes necesidades sociales y económicas de un país isleño con escasez de vivienda y de terrenos, una gran concentración poblacional, y un costo creciente de la infraestructura. Cond. Prof. S.J. H. Centre v. P.R. F. Inc., 133 D.P.R. 488, 490 (1993). Su particularidad reside en que los dueños se ponen de acuerdo **contractualmente** para constituir una comunidad mediante la cual se protege y facilita el disfrute no sólo de los elementos comunes del inmueble donde ubican sus residencias sino también el de sus apartamentos particulares. La buena marcha de la comunidad es indispensable precisamente para hacer efectiva la titularidad de los dueños. Esa buena marcha, y la propia supervivencia del consorcio, está amenazada por el continuo problema de los condómines que pretenden disfrutar a plenitud de su propiedad sin hacer las aportaciones al régimen que les corresponden. Maldonado v. Consejo de Titulares, 111 D.P.R. 427 (1981). **Es por ello que la obligación del condómine de hacer sus aportaciones a tiempo es de la más alta prioridad**. El incumplimiento con esta obligación no sólo viola el

---

[7] Sobre el particular, véase M.J. Godreau, El Condominio, (1992), págs. 122-126 donde se comenta la falta de claridad sobre el alcance de esta disposición.

contrato entre los condueños sino que pone en grave riesgo la preservación de la comunidad misma, y por ende, el disfrute de la propiedad particular de cada uno de los condómines.

II

A la luz de todo lo anterior, me parece evidente que la decisión de este Tribunal con respecto a la controversia del caso de autos ha debido ser la de hacer valer el esquema normativo que procura el cumplimiento de la fundamental obligación de todo condómine de aportar lo que le corresponde a los gastos comunes del régimen de la propiedad horizontal, confirmando la descalificación del peticionario. Sólo así se le da efectividad a la clara política pública del país en favor de la utilización del régimen de la propiedad horizontal. Arce v. Caribbean Home Const. Corp., 108 D.P.R. 225, 242 (1978); Asoc. de Condómines v. Seguros Arana, 106 D.P.R. 133, 138 (1977); Asoc. de Condómines v. Naveira, 106 D.P.R. 88, 91 (1977). Como la mayoría opta por otro curso de acción, yo disiento.


JAIME B. FUSTER BERLINGERI
JUEZ ASOCIADO