El Juez Asociado Señor Rivera García
emitió la opinión del Tribunal.
Este recurso nos brinda la oportunidad de examinar por primera vez la naturaleza de las barandas de los balcones de un condominio y si la conservación, la reparación y el mantenimiento de estas dentro del régimen de propiedad horizontal recae en la Junta de Directores del Condominio o en los titulares. Una vez adjudicada esa controversia, también podremos aclarar cómo los titulares pueden va-riar o transferir la obligación de a quién le corresponde la responsabilidad de mantener o remplazar las barandas de los balcones de acuerdo con la Ley de Condominios.
Examinemos los hechos que originaron la controversia en el presente caso.
*6 I
El señor Hermán Cestero Aguilar es propietario de un apartamento en el Condominio Plaza del Mar (el Condomi-nio) localizado en el Municipio de Carolina. En noviembre de 2005, el señor Cestero Aguilar se percató de que un pe-dazo de metal se desprendió de la baranda de su balcón. Si bien la referida barandilla estaba deteriorada y corroída, el recurrido consideró que su colapso lo ocasionó una guindola utilizada para realizar trabajos de pintura en el condominio. Así, este le reclamó verbalmente a la administración del edi-ficio que reparara la baranda del balcón de su apartamento, quien hizo caso omiso a su requerimiento.
Posteriormente, la administración del Condominio le envió varias misivas al señor Cestero Aguilar relacionadas con el deterioro extremo de la barandilla del balcón de su apartamento(1) En ellas se le requería que la remplazara inmediatamente. Si no realizaba esta gestión, la adminis-tración le informó que repararían la baranda y le factura-rían el coste.(2) Tal petición se sustentó en la condición de peligrosidad que esta representaba para los titulares y vi-sitantes del edificio(3)
El señor Cestero Aguilar, por su parte, respondió que la obligación de reparar la baranda de su balcón recaía en la “junta administrativa del condominio”.(4) Asimismo, señaló que los gastos de reparación se debían sufragar del fondo de reserva.(5) Consecuentemente, el recurrido no realizó gestión alguna para remplazar la baranda afectada.
*7 Así las cosas, en abril de 2008, la Junta de Directores del Condominio Plaza del Mar (la Junta o la peticionaria) presentó una demanda sobre interdicto ante el Tribunal de Primera Instancia. En síntesis, solicitó que se le ordenara al recurrido que permitiera que la administración del Con-dominio accediera a su apartamento para reparar la ba-randa del balcón a expensas del titular. Luego de celebrada la vista, el foro primario declaró “con lugar” la demanda en cuestión. Específicamente, le ordenó al señor Cestero Aguilar que permitiera la entrada a su apartamento del personal que designe la administración para realizar la reparación. Asimismo, indicó que los gastos de ese trabajo serían sufragados por el Consejo de Titulares del Condominio. No obstante, aclaró que esta última determi-nación no es concluyente en cuanto a la controversia sobre quién es el responsable legal de asumir los costos de repa-ración de la barandilla del balcón.(6)
Conforme a la citada orden, la administración reparó la baranda afectada. El costo de esa labor ascendió a $3,950. Mediante carta de 14 de noviembre de 2008, la administra-ción del Condominio le informó al recurrido que le factura-ría a su cuenta de mantenimiento los $6,537.50 correspon-diente a los costos de la reparación de la barandilla y a los gastos legales en los que incurrió para lograr acceso a su ap artamento. (7)
Mientras tanto, y previo al envío de la citada carta, el recurrido presentó una querella ante el Departamento de Asuntos del Consumidor (DACo). En lo pertinente a la con-troversia que nos ocupa, éste alegó y cuestionó el requeri-miento por escrito que le hiciera la Junta para asumir los gastos de la reparación de la baranda averiada.(8)
El 1 de diciembre de 2008, DACo celebró la vista *8 administrativa. Durante la audiencia, la Junta argumentó que su negativa a sufragar los costos de reparación de la baranda afectada se sustentaba en un acuerdo al que lle-garon los titulares en una reunión del Consejo de Titulares celebrada en octubre de 2005. Específicamente, indicó que en la referida asamblea una mayoría de los condominos pactaron que el mantenimiento y remplazo de las baran-das de los balcones de los apartamentos recaía en cada uno de los propietarios.(9) Asimismo, señaló que tal convenio fue incorporado en el Art. XVI, Sec. 21(g), del nuevo regla-mento del Condominio, el cual fue aprobado en agosto de 2008.(10)
Examinada la prueba presentada, DACo concluyó que la baranda ubicada en el balcón de un apartamento es un elemento común del condominio según el Art. 11 de la Ley de Condominios, 31 L.P.R.A. 1291i. En su análisis, razonó que ese elemento es indispensable para el disfrute del apartamento. Asimismo, señaló que la baranda formaba parte de la fachada del condominio al estar fijada al piso y a las paredes maestras del edificio, y ser parte del diseño arquitectónico exterior del edificio, según definido en el Art. 15 de la Ley de Condominios, 31 L.P.R.A. sec. 1291m. Por tales motivos, resolvió que la Junta de Directores del Condominio tenía la obligación de corregir cualquier de-fecto que presentara la barandilla del balcón del aparta-mento del recurrido, según lo establecido en el Art. 38-D(g) de la Ley de Condominios, 31 L.P.R.A. sec. 1293b-4.
En cuanto al acuerdo alcanzado por los titulares para asumir los costos de mantenimiento de las barandas de sus respectivos balcones y la subsiguiente enmienda al regla-mento del Condominio, DACo resolvió que ambas actuacio-nes eran nulas porque no fueron aprobadas por unanimi-dad, sino por una mayoría simple de votos. La agencia *9 particularizó que cualquier decisión que afectara la natu-raleza comunal de un elemento del edificio, requería la unanimidad de los titulares. Ya que los acuerdos adoptados en el presente caso implican una modificación al carácter comunal de las barandillas de los balcones, DACo concluyó que era necesario el voto unánime de los titulares.
La Junta, inconforme, recurrió ante el Tribunal de Apelaciones. El recurso presentado únicamente cuestionó la determinación de la agencia en cuanto al requerimiento de unanimidad de los titulares para validar el acuerdo de traspaso del mantenimiento de las barandas de los balco-nes de los apartamentos. Mediante Sentencia de 17 de julio de 2009, el foro apelativo intermedio confirmó la resolución impugnada por los mismos fundamentos esbozados por DACo.
Insatisfecha, la peticionaria presentó ante este Foro el recurso de certiorari de epígrafe, en donde nos plantea los errores siguientes:
Erró el Honorable Tribunal de Apelaciones al confirmar al De-partamento de Asuntos del Consumidor al determinar que el acuerdo adoptado por el Consejo de Titulares en la Asamblea Extraordinaria, en cuanto a la responsabilidad de cada titular en dar mantenimiento y reemplazar las barandas de sus res-pectivos apartamentos no cumplió con el requisito de unani-midad de los titulares.
Erró el Honorable Tribunal de Apelaciones al determinar que la enmienda al reglamento del Condominio Plaza del Mar es nula porque requería unanimidad y no mayoría simple por la naturaleza del acuerdo incorporado sobre el reemplazo y man-tenimiento de las barandas.
Erró el Departamento de Asuntos del Consumidor al determi-nar que los procedimientos llevados en la Asamblea no fueron conforme a derecho sin contar con prueba en el expediente para apoyar su determinación. Certiorari, pág. 5.
Examinado el recurso, ordenamos expedir el manda-miento de certiorari en el caso de autos. Posteriormente, le concedimos un término de diez días a la peticionaria y re-currida para que presentaran sus respectivos alegatos. La peticionaria compareció oportunamente; sin embargo, la *10 recurrida falló en presentar su alegato en oposición, por lo que el caso quedó sometido sin su comparecencia. Así, pues, pasamos a resolver la controversia que nos ocupa.
1 — i H-i
A. La Ley Núm. 103 de 5 de abril de 2003, según enmendada, conocida como Ley de Condominios, 31 L.P.R.A. sec. 1291 et seq., regula el régimen de propiedad horizontal en Puerto Rico. El mencionado estatuto establece unos criterios que hacen viable la propiedad individual sobre determinados espacios que componen un edificio.(11) En particular, procura que los propietarios de un apartamento obtengan el pleno disfrute de su propiedad, así como de los elementos comunes del edificio que sirven igualmente al resto de los titulares individuales.(12) Ello recoge la esencia de la horizontalidad en nuestro ordenamiento jurídico, a saber: “la coexistencia de diversos pisos de dominio exclusivo con el condominio forzoso e inescapable de elementos comunes.” Asoc. C. Quadrangle Med. Ctr. v. Ramírez, 154 D.P.R. 699, 707 (2001).
Así, el régimen de propiedad horizontal entrelaza dos formas independientes de propiedad; es decir, reúne en un solo inmueble la propiedad privativa sobre el piso o apartamento y la copropiedad sobre los elementos comunes, siendo esta última accesoria a la propiedad sobre espacios privados.(13) En ese sentido, se ha pautado que dentro del régimen propietario de la horizontalidad, los bienes comunes existen con el fin de servir para el disfrute de lo privado. Rivera Rodríguez v. Junta Dir. I y II, 173 D.P.R. 475 (2008). Por tal motivo, esos elementos comunes se *11 mantienen en indivisión forzosa. Íd. Véase, además, Art. 13 de la Ley de Condominios, 31 L.P.R.A. sec. 1291k.
Ahora bien, este requerimiento legal de indivisión forzosa no implica necesariamente que todos los elementos comunes sean idénticos en cuanto a su naturaleza y, por ende, reciban el mismo tratamiento dentro del régimen. Por el contrario, la propia Ley de Condominios hace una distinción entre aquellos elementos no sujetos a propiedad individual y aquellos que pueden ser objeto de una conversión y transferencia para beneficio de uno o varios titulares. A esos efectos, el Art. 11 de la Ley de Condominios, supra, categoriza los elementos comunes de la forma siguiente:
Elementos comunes generales del inmueble
Los elementos comunes del inmueble son los siguientes:
(a) Se consideran elementos comunes generales necesarios, no susceptibles de propiedad individual por los titulares y su-jetos a un régimen de indivisión forzosa los siguientes:
(1) El vuelo, entendido éste como el derecho a sobre elevar. Excepto lo dispuesto en la sec. 1291Z-1 [Art. 14A de la Ley], el cierre o techado de patios, terrazas o áreas abiertas, así como la construcción de nuevos pisos sobre el techo y sobre o debajo del terreno requerirá, siempre que tales obras no es-tén contempladas en los planos sometidos con la escritura de constitución de régimen, el consentimiento unánime de los ti-tulares; disponiéndose que este requerimiento no aplicará al cierre o techado de patios, terrazas o áreas abiertas ubicados en el suelo o planta baja (a nivel del terreno) del inmueble y destinados para uso exclusivo de determinados apartamientos constituidos en régimen previo al 5 de abril de 2003.
(2) Los cimientos, paredes maestras y de carga, techos, galerías, escaleras y vías de entrada y salida o de comunicación.
(3) Los locales para instalaciones de servicios centrales, como electricidad, luz, gas, agua fría y caliente, refrigeración, cisternas, tanques y bombas de agua, y demás similares que sean indispensables para el adecuado disfrute de los aparta-mientos, salvaguardando que estos elementos no se ubiquen dentro de los apartamientos o locales privados.
(4) Los ascensores, cuando éstos sean necesarios para el adecuado disfrute de los apartamientos.
*12 (5) Las áreas verdes y los árboles requeridos por las instrumentalidades o dependencias del Estado Libre Asociado de Puerto Rico.
(6) Cualquier otro elemento que fuere indispensable para el adecuado disfrute de los apartamientos en el inmueble.
Cualquier pacto que transfiera la titularidad, posesión o control de estos elementos a otra persona natural o jurídica distinta del Consejo de Titulares será nulo.
(b) Se consideran elementos comunes generales, salvo dis-posición o estipulación en contrario, los siguientes:
(1) El terreno, los sótanos, azoteas, patios y jardines.
(2) Los locales destinados a alojamiento de porteros o encargados.
(3) Las áreas destinadas a estacionamiento.
(4) Las áreas recreativas que excedan lo requerido por la reglamentación urbana o por las autoridades competentes. (Énfasis suplido.) 31 L.P.R.A. sec. 1291i.
Una lectura del texto antes citado, así como de la tota-lidad de la Ley de Condominios, refleja la existencia de tres grandes grupos dentro de los cuales se clasifican los elementos comunes, a saber: (1) necesarios o voluntarios; (2) generales o limitados, y (3) procomunales.(14) El primer grupo —necesarios o voluntarios— categoriza los elemen-tos comunes según su indispensabilidad para el adecuado disfrute de las unidades privadas. Mientras tanto, en el segundo grupo —generales o limitados— se distinguen los elementos en función de las personas que tengan derecho al uso y disfrute de determinadas áreas comunes.
En lo pertinente al caso que nos ocupa, se consideran necesarios aquellos elementos comunes sin los cuales resultaría inasequible el adecuado disfrute de los apartamentos. (15) Esto incluye aquellos necesarios para lograr la seguridad, conservación o existencia del edificio. Brown III v. J.D. Cond. Playa Grande, 154 D.P.R. 225, 233 *13 (2001); Arce v. Caribbean Home Const. Corp., 108 D.P.R. 225 (1978). Consecuentemente, estos tienen que ser reser-vados para el uso de la totalidad de los condominos, por lo que no son susceptibles de enajenación o propiedad exclu-siva de alguno o varios titulares. Id.
En su contraparte, los voluntarios son aquellos elementos que no son imprescindibles para el adecuado disfrute de la propiedad individual. Esa característica per-mite que las áreas así categorizadas sean atribuidas a uno o varios titulares en específico.(16) La adjudicación de los referidos elementos comunes se podrá efectuar en la escritura matriz del condominio o mediante consentimiento unánime de todos los titulares cuando la transferencia o conversión ocurra luego de constituido el régimen. Art. 11 de la Ley de Condominios, Ley de Condominios, supra. Véase, además, Brown III v. J.D. Cond. Playa Grande, supra.
Por otro lado, los elementos comunes generales son aquellos destinados al uso de todos los condominos.(17) Mientras tanto, los limitados son aquellas áreas cuyo disfrute y aprovechamiento se restringe a ciertos titulares con exclusión de los demás.(18) La conversión de un elemento común general a uno limitado procede mediante acuerdo unánime de todos los titulares del edificio. Art. 12 de la Ley de Condominios, 31 L.P.R.A. sec. 1291j. En ausencia de ese acuerdo o de una designación a esos efectos en la escritura matriz del inmueble, los elementos comunes se considerarán generales.
La obligación de reparar, mantener y conservar los elementos comunes generales del edificio recae propor- *14 cionalmente en todos los titulares. Art. 39 de la Ley de Condominios, 31 L.P.R.A. sec. 1293c. Ese deber legal se cumple mediante el pago de la cuota de mantenimiento que se le asigna a cada propietario. Así, pues, la cuota de mantenimiento está revestida de un alto grado de impor-tancia dentro del régimen de horizontalidad. Ello se debe a que la referida aportación persigue garantizar el buen fun-cionamiento del régimen al lograr preservar los elementos comunes y facilitar que los condominos los utilicen. D.A.Co. v. Cond. Castillo del Mar, 174 D.P.R. 967 (2008); Asoc. C. Quadrangle Med. Ctr. v. Ramírez, supra, pág. 708; Maldonado v. Consejo de Titulares, 111 D.P.R. 427, 430 (1981).
Ahora bien, la carga de mantener los elementos comunes limitados le corresponde únicamente a los titulares que tengan el uso exclusivo de tales áreas. Por eso, el Art. 13 de la Ley de Condominios, supra, señala que “[1]o relativo [al mantenimiento de] los elementos comunes limitados corresponde a los titulares de los apartamientos a los que fueron destinados los mismos”. Véase Art. 39 de la Ley de Condominios, supra; M.J. Godreau, El condominio: el régimen de propiedad horizontal en Puerto Rico, San Juan, Ed. Dictum, 1992, pág. 88. En esa línea, la ley especifica que cuando los titulares “no realicen las obras de mantenimiento de sus respectivos elementos comunes limitados y con ello se perjudiquen el inmueble o los restantes titulares, la Junta de Directores podrá realizarlas a costa de los titulares a quienes se destinaron los referidos elementos”. Art. 13 de la Ley de Condominios, supra.
B. El citado Art. 11 de la Ley de Condominios especifica cuáles elementos son necesarios y cuáles son voluntarios. En cuanto a los elementos comunes necesarios, el referido artículo menciona el vuelo, los cimientos, las paredes maestras y de carga, los techos y ascensores, entre otros. 31 L.P.R.A. sec. 1291i(a)(1). Sin embargo, esta lista no es taxativa. Brown III v. J.D. Cond. Playa Grande, *15 supra. Por eso, en el inciso (a)(1)(6), el Art. 11 postula que también se considerará un elemento común necesario cual-quier otro “que fuere indispensable para el adecuado dis-frute de los apartamientos en el inmueble”. 31 L.P.R.A. sec. 1291i(a)(1)(6). Ello significa que los elementos comunes ne-cesarios enumerados en el estatuto son “numerus apertus”, por lo que se permite pactar o reconocer otros elementos comunes no considerados por la ley. Brown III v. J.D. Cond. Playa Grande, supra.
Cónsono con lo anterior, en Junta Dir. Cond. Montebello v. Torres, 138 D.P.R. 150 (1995), pautamos que la fachada de un edificio constituía un elemento común necesario. Particularmente, indicamos que “tanto la fachada como las demás paredes perimetrales de un edificio son consideradas como bienes de uso común por ser racionalmente necesarias para la ‘existencia, conservación, seguridad y adecuado uso y disfrute’ del inmueble”. (Énfasis suplido.) Id., pág. 155.(19) Añadimos que esa naturaleza común necesaria implicaba que los titulares adquirían una parte indivisa de la fachada, por lo que estos no la podían utilizar ilimitadamente ni introducirle cambios trascendentales. Íd., pág. 156.
La prohibición a los titulares de alterar la fachada unilateralmente está recogida en el Art. 15 de la Ley de Condominios, supra. En lo pertinente, el inciso (e) del citado artículo dispone lo siguiente:
(e) Ningún titular u ocupante podrá, sin el consentimiento de todos los titulares, cambiar la forma externa de la fachada, *16 ni decorar las paredes, puertas o ventanas exteriores con co-lores o tonalidades distintas a las del conjunto. Se entiende por fachada el diseño del conjunto arquitectónico y estético exterior del edificio, según se desprende de los documentos constitutivos del condominio. 31 L.P.R.A. sec. 1291m(e).
Aun cuando la Ley de Condominios menciona que las ventanas, puertas, rejas u ornamentos forman parte de la fachada,(20) el estatuto no es preciso en cuanto a la totalidad de los elementos que constituyen la fachada del edificio. Ante tal laguna, tanto la jurisprudencia como la glosa han interpretado y descifrado algunos de los componentes que la conforman. En lo que concierne al caso que nos ocupa, el balcón de los apartamentos ha sido reconocido como uno de esos elementos de la fachada afecto a la prohibición de modificación unilateral. Junta Dir. Cond. Montebello v. Torres, supra, pág. 157.(21) Esto se debe a que el balcón “constituye una parte importante del diseño arquitectónico y la estética de un edificio”. Id.
Ahora bien, existe un elemento específico en el balcón cuya naturaleza amerita ser atendida con especial detenimiento: las rejas o barandas. Una de sus funciones obvias es fijar los límites del balcón. No obstante, estas también cumplen con el cometido de brindar seguridad y protección a los titulares y visitantes del edificio. En ausencia de ellas, existe un riesgo claro y palpable de que ocurra un accidente, tal como la caída de una persona al vacío, entre otras. Esto hace necesario que las barandas o rejas en los balcones se encuentren ancladas a las paredes maestras del edificio y al suelo que sirve de techo al piso inferior. Por lo tanto, pasan a formar algo íntegramente unido a la fachada. Las mencionadas características tor-nan las rejas o barandas de los balcones en un elemento común necesario.
*17 Acorde con esta discusión, el arquitecto español José Mitj avila, al analizar el muro de fachada como elemento común de un edificio sujeto al régimen de propiedad horizontal, expone que cualquier reparación que sea necesaria en ella debe correr a cargo de la comunidad. Ello incluye la restauración o arreglo de las barandas o rejas del balcón. Así, el arquitecto particulariza que
[s]i algún copropietario observara cierto desperfecto en el trozo de fachada correspondiente a su piso, debido a la acción del tiempo, tal como algún desconchado de moldura, del revoco o barandilla de balcón de obra o de hierro, etc., deberá dar aviso inmediatamente a la comunidad para su reparación por cuenta de todos, y no actuará nunca por su propia decisión buscando directamente el personal para el arreglo. (Énfasis suplido.) J.A. Mitjavila, La ley sobre la propiedad horizontal enjuiciada por un arquitecto: texto legal, estatutos, comenta-rios, Barcelona, Ed. Bosch, 1962, pág. 20.
De acuerdo con lo anterior, concluimos que la re- ■ paración o sustitución de las rejas o barandas del balcón la debe costear el Consejo de Titulares, ya que estas constituyen un elemento común necesario para la seguridad del inmueble y el adecuado disfrute de los apartamentos. No obstante, somos conscientes de que en algunos casos el deterioro de las mencionadas rejas o barandas se debe al descuido o la negligencia de los titulares del piso. Ante tales circunstancias, resultaría injusto cargarles a todos los titulares el coste de reparación o sustitución de estas. Consecuentemente, resolvemos que cuando obras de reparación sean necesarias por el abandono, falta de diligencia o alguna actuación intencional del propietario del piso o local, los gastos los deberá asumir el referido titular.
III
Los primeros dos señalamientos de error se discutirán en conjunto por estar relacionados entre sí. En esencia, la peticionaria aduce que el foro apelativo intermedio erró al *18 resolver que el acuerdo para transferir a los titulares el mantenimiento de las barandas de los balcones del edificio requería el voto unánime de los propietarios y que tal exi-gencia no se cumplió en este caso. Al así hacerlo, la Junta sostiene que durante la asamblea de 24 de octubre de 2005 se determinó unánimemente sobre la responsabilidad de cada titular en el mantenimiento y remplazo de las rejas de la baranda de sus respectivos apartamentos. Igual-mente, aduce que dichos acuerdos se le notificaron a los condominos sin que se presentara ninguna discrepancia o desacuerdo con el mismo, por lo que sostuvo su validez al ser adoptado y aprobado por unanimidad. Como conse-cuencia, la peticionaria señaló que el pacto se incorporó al reglamento del Condominio, el cual fue aprobado el 21 de agosto de 2008.
Según expusimos previamente, dentro del régimen de horizontalidad se han reconocido varios tipos de elementos comunes. La clasificación de cada uno dependerá de la fun-ción que ejerzan dentro del adecuado disfrute del inmueble y de la propiedad privada. Así, dentro de un condominio, y en lo que concierne a este caso, podemos encontrar elemen-tos comunes necesarios y elementos comunes voluntarios. Los primeros —elementos comunes necesarios— no son susceptibles de propiedad individual o transferencia por su indispensabilidad para lograr el adecuado disfrute de la propiedad. Esto incluye los elementos necesarios para la seguridad del edificio y de los titulares.
Los elementos comunes voluntarios, sin embargo, no go-zan del carácter de indispensable, por lo que pueden ser transferidos a propiedad privada o su disfrute puede ser limitado a un grupo determinado de titulares. Ello, siem-pre y cuando conste en la escritura matriz del régimen o se haya adoptado mediante acuerdo unánime de todos los propietarios.
En el presente caso, el elemento en controversia es la baranda del balcón de uno de los apartamentos del edificio. *19 Luego de analizar la función de la barandilla del balcón dentro del contexto del edificio según la Ley de Condomi-nios, concluimos que esta constituye un elemento común necesario no susceptible de ser transferido a los titulares.
Por una parte, coincidimos con el foro administrativo y el tribunal apelativo intermedio en que la baranda del bal-cón forma parte del diseño arquitectónico del edificio. Con-secuentemente, esta conforma parte de la fachada del con-dominio, la cual es considerada por sí sola como un elemento común necesario. Véase Junta Dir. Cond. Montebello v. Torres, supra. Así, pues, las rejas del balcón tam-bién gozan de la naturaleza de elemento común necesario y, por formar parte de la fachada, están sujetas a la prohi-bición de alteración estatuida en el Art. 15 de la Ley de Condominios, supra.
De otro lado, en la mayoría de las ocasiones, las baran-das delimitan el perímetro del balcón, por lo cual se ha sostenido que estas cumplen un propósito de seguridad. En ausencia de ellas existe un riesgo claro y palpable de que ocurra un accidente que ponga en riesgo la vida de los re-sidentes y visitantes. Por tal motivo, las rejas están fijadas a las paredes maestras del edificio y al suelo del balcón. En ese sentido, se reafirma el hecho de que las rejas del balcón son parte integral de la fachada. Asimismo, se concretiza su indispensabilidad para el adecuado disfrute del aparta-mento por evidentes razones de seguridad.
Conforme a lo indicado anteriormente, la naturaleza común necesaria de las barandas del balcón implica que estas se deben mantener siempre en indivisión forzosa. En otras palabras, no admiten pacto en contrario en cuanto a su titularidad y naturaleza común general. Cualquier cláusula en la escritura matriz o acuerdo —aun cuando sea unánime— de los condominios que transfiera a uno o a varios de los propietarios la titularidad de las barandas o modifique su naturaleza común general, será nulo.
*20 Así las cosas, el mantenimiento, la conservación y reparación de las rejas ubicadas en los balcones de los apartamentos, así como de los restantes elementos comunes generales del condominio, recaen exclusivamente en la Junta de Directores. A esos efectos, el Art. 38-D(g) de la Ley de Condominios, 31 L.P.R.A. sec. 1293b-4(g), dis-pone que la Junta tendrá el deber de “[a]tender a la conservación del inmueble y disponer las reparaciones ordinarias y en cuanto a las extraordinarias, adoptar las medidas necesarias dando inmediata cuenta al Consejo”. (Enfasis suplido.) Los gastos en que incurra la Junta se sufragarán con los fondos recolectados en concepto de las cuotas de mantenimiento que pagan los titulares mensualmente para conservar y administrar los elementos comunes generales del edificio. Véase Art. 39 de la Ley de Condominios, supra. La Ley de Condominios reconoce a los titulares la facultad de realizar acuerdos relacionados con la conservación de los elementos comunes. El Art. 16 faculta a los condominos de un inmueble adscrito al régimen de propiedad horizontal a establecer acuerdos por mayoría de titulares con relación a las obras necesarias para la conservación o seguridad del inmueble y para el uso eficaz de los elementos comunes. Art. 16 de la Ley de Condominios, 31 L.P.R.A. sec. 1291n. Sin embargo, en casos en los que se afecten o se puedan afectar de forma adversa los elementos comunes, el estatuto requiere el consentimiento unánime de los titulares. Id.
De acuerdo con la discusión que antecede, coincidimos con el foro apelativo intermedio en que el acuerdo para transferir a los titulares el mantenimiento y remplazo de las barandas de los balcones de sus apartamentos es nulo, aunque por fundamentos diferentes. Como hemos estable-cido, la baranda de los balcones es un elemento común ne-cesario que conforma parte del conjunto arquitectónico de-nominado “fachada”. El mantenimiento y conservación de dicha área recae en la Junta de Directores. Los titulares *21 pueden acordar que la conservación de estos elementos co-munes necesarios sea por su cuenta. Sin embargo, en aque-llas situaciones relacionadas a elementos comunes necesa-rios que propician la seguridad del inmueble y el adecuado disfrute de los apartamentos, como son las barandas y re-jas de los balcones u otros similares que constituyen parte de la fachada, será necesario el consentimiento unánime de los condominos. Cualquier arreglo o intervención inde-bida de los titulares en estos elementos puede resultar ad-versa y en detrimento del régimen.
Como expusimos, en el recurso ante nuestra considera-ción, la controversia se circunscribe a la validez del acuerdo de traspaso del mantenimiento de las barandas de los balcones de los apartamentos a los titulares. La natu-raleza común necesaria de las rejas de los balcones impide que su titularidad sea transferida a los titulares o su cla-sificación dentro de la gama de elementos del edificio sea modificada. Igualmente, y debido a que estos constituyen parte de la fachada del edificio y propician la seguridad del inmueble, cualquier acuerdo para conservar o remplazar-los debe ser unánime. De lo contrario, el mantenimiento de estos elementos comunes necesarios recaerá siempre en la Junta de Directores del condominio con cargo a la comunidad. El examen del expediente ante nos revela cla-ramente que el pacto en la asamblea del 2005 fue acogido por votación de 19 votos a favor y 14 votos en contra, por lo que no fue acogido unánimemente. Ante tal realidad, el acuerdo alcanzado en la asamblea es nulo y no se podía incorporar al reglamento del Condominio.
Adjudicado lo anterior, resulta innecesario entrar a dis-cutir el tercer señalamiento de error del recurso, ya que versa sobre la validez o nulidad de los procedimientos se-guidos en la Asamblea en donde se aprobó la transferencia a los titulares del mantenimiento de las barandas del balcón. Además, cabe destacar que tal señalamiento no fue planteado oportunamente ante el Tribunal de Apelaciones.
*22 En cuanto a este último aspecto, es doctrina reiterada que el derecho apelativo, al igual que el derecho general, es rogado. Pérez, Ex parte v. Depto. de la Familia, 147 D.P.R. 556 (1999): Pueblo v. Prieto Maysonet, 103 D.P.R. 102, 107 (1974). Si bien es cierto que la peticionaria presentó y dis-cutió el error en el recurso que nos ocupa, su plantea-miento no fue oportuno. La peticionaria estaba obligada a realizar el señalamiento ante el Tribunal de Apelaciones para que ellos pasaran juicio sobre esa controversia particular y posteriormente impugnarla ante este Foro de no haber estado conforme con su adjudicación.
Debemos recordar que nuestra competencia apelativa en recursos de certiorari se limita a revisar las sentencias o resoluciones emitidas por el Tribunal de Apelaciones.(22) En el caso de autos, la sentencia cuya revisión solicita la peti-cionaria no atiende la controversia planteada en el tercer error del recurso. Consecuentemente, y en ausencia de mo-tivos que justifiquen apartarnos de esta norma, debemos abstenernos de intervenir en ese asunto.
IV
Por los fundamentos expuestos, confirmamos la Senten-cia emitida por el Tribunal de Apelaciones.
El Juez Presidente Señor Hernández Denton emitió una opinión concurrente, a la cual se unió la Juez Asociada Señora Rodríguez Rodríguez.

 Resolución del Departamento de Asuntos del Consumidor (DACo) de 4 de diciembre de 2008, Apéndice del recurso de certiorari, págs. 129-138. Véase, también, Sentencia de 3 de octubre de 2008, Apéndice del Certiorari, págs. 111-114.

 íd.

 En una de las cartas remitidas al Sr. Hermán Cestero Aguilar, la adminis-tración del Condominio Plaza del Mar hizo referencia a un incidente en donde los pedazos de metal de la baranda en cuestión cayeron al área de estacionamiento del edificio. íd.

 Carta de 29 de febrero de 2008, Apéndice del Certiorari, págs. 164-165.

 íd.

 Sentencia de 3 de octubre de 2008, Apéndice del Certiorari, págs. 111-114.

 El desglose de la factura fue el siguiente: $3,950 en concepto de la reparación de la baranda; $2,512 en honorarios de abogado, y $75 correspondientes al emplazamiento. Carta de 14 de noviembre de 2008, Apéndice del Certiorari, pág. 115.

 Querella de 4 de septiembre de 2008, Apéndice del Certiorari, págs. 122-125.

 Resolución de DACo de 4 de diciembre de 2008, Determinación de Hecho 11, Apéndice del Certiorari, pág. 131.

 íd.

 Art. 1-A de la Ley de Condominios, 31 L.P.R.A. sec. 1291 n.

 íd.

 Véase M. Pons González y M.A. del Arco Torres, Régimen jurídico de la propiedad horizontal: doctrina científica y jurisprudencia, legislación, formularios, 6ta ed., Granada, Ed. Comares, 1995, págs. 167-168.

 Véanse: Arts. 11, 11A y 12 de la Ley de Condominios, 31 L.P.R.A. secs. 1291i, 1291i-1 y 1291j; M.J. Godreau, El condominio: el régimen de propiedad horizontal en Puerto Rico, San Juan, Ed. Dictum, 1992, págs. 83-91.

 Godreau, op. cit, pág. 83.

 íd.

 Godreau, op. cit., págs. 86-87; E. Vázquez Bote, Tratado teórico, práctico y crítico de derecho privado puertorriqueño, San Juan, Ed. Butterworth, 1993, Vol. VIII, pág. 158.

 íd.

 Véanse, también: J.V. Fuentes Lojo, Nueva problemática legal, doctrinal y jurisprudencial sobre propiedad horizontal: apéndice de actualización a la Suma de la Propiedad por Apartamentos, Barcelona, Ed. Bosch, 1985, pág. 642 (“La conside-ración de una fachada como elemento común no es discutida por nadie, por ser algo esencial en el edificio mismo y formar parte de su estructura J.A. Rabella de Carrillo, La Propiedad Horizontal, Barcelona, Ed. Acervo, 1960, pág. 54 (“Constitu-yen sin duda elemento común por constituir necesariamente una unidad incluso en lo que afecta a las cuestiones de estética u ornato del edificio”).

 Art. 15 de la Ley de Condominios, 31 L.P.R.A. sec. 1291m.

 Véase, además, A.R. Palmiero, Tratado de la Propiedad Horizontal, Buenos Aires, Ed. Depalma, 1974, pág. 238.

 Art. 3.002(d) de la Ley Núm. 201 de 22 de agosto de 2003, según enmen-dada, conocida como Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003 (4 L.P.R.A. sec. 24s(d)).