

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Hermán J. Cestero Aguilar<br><br>    Recurrido<br><br>        v.<br><br>Junta de Directores del Condominio Plaza del Mar<br><br>    Peticionario | Certiorari<br><br>2011 TSPR 203<br><br>184 DPR ____ |

Número del Caso:   CC-2009-725


Fecha: 20 de diciembre de 2011


Tribunal de Apelaciones:

         Región Judicial de Carolina Panel V


Juez Ponente:      Hon. Andrés Salas Soler


Abogado de la Parte Peticionaria:

         Lcdo. Mario A. Prieto Batista


Abogada de la Parte Peticionaria:

         Lcda. Cristina Muñoz Firpi


Materia: Ley de Condominios


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Hermán J. Cestero Aguilar

  Recurrido

    v.

Junta de Directores del
Condominio Plaza del Mar

  Peticionario

Certiorari

CC-2009-0725

Opinión del Tribunal emitida por el Juez Asociado señor Rivera García.

En San Juan, Puerto Rico, a 20 de diciembre de 2011.

Este recurso nos brinda la oportunidad de examinar por primera vez la naturaleza de las barandas de los balcones de un condominio y si la conservación, reparación y mantenimiento de éstas dentro del régimen de propiedad horizontal recae en la Junta de Directores del Condominio o en los titulares. Una vez adjudicada esa controversia, también podremos aclarar cómo los titulares pueden variar o transferir la obligación de a quién le corresponde la responsabilidad de mantener o reemplazar las barandas de los balcones a tono con la Ley de Condominios.

Examinemos los hechos que originaron la controversia en el presente caso.

I

El señor Hernán Cestero Aguilar es propietario de un apartamento en el Condominio Plaza del Mar (el Condominio) localizado en el Municipio de Carolina. En noviembre de 2005, el Sr. Cestero Aguilar se percató que un pedazo de metal se desprendió de la baranda de su balcón. Si bien la referida barandilla estaba deteriorada y corroída, el recurrido consideró que su colapso fue ocasionado por una guindola utilizada para realizar trabajos de pintura en el condominio. Así, éste le reclamó verbalmente a la administración del edificio que reparara la baranda del balcón de su apartamento, quien hizo caso omiso a su requerimiento.

Posteriormente, la administración del Condominio Plaza del Mar le envió varias misivas al Sr. Cestero Aguilar relacionadas al deterioro extremo de la barandilla del balcón de su apartamento.[1] En ellas se le requería que la reemplazara inmediatamente. De no realizar gestión alguna a esos fines, la administración le informó que repararían la baranda y le facturarían el costo.[2] Tal petición se

---

[1] Resolución del Departamento de Asuntos del Consumidor (DACo) de 4 de diciembre de 2008, Apéndice del recurso de *certiorari*, págs. 129-138. Véase, también, Sentencia de 3 de octubre de 2008, Apéndice del recurso de *certiorari*, págs. 111-114.

[2] Íd.

sustentó en la condición de peligrosidad que esta representaba para los titulares y visitantes del edificio.[3]

El Sr. Cestero Aguilar, por su parte, respondió que la obligación de reparar la baranda de su balcón recaía en la "junta administrativa del condominio".[4] Asimismo, señaló que los gastos de reparación debían sufragarse del fondo de reserva.[5] Consecuentemente, el recurrido no realizó gestión alguna para reemplazar la baranda afectada.

Así las cosas, en abril de 2008 La Junta de Directores del Condominio Plaza del Mar (la Junta o la peticionaria) presentó una demanda sobre interdicto ante el Tribunal de Primera Instancia. En síntesis, solicitó que se le ordenara al recurrido permitir que la administración del Condominio accediera a su apartamento para reparar la baranda del balcón a expensas del titular. Luego de celebrada la vista, el foro primario declaró Con Lugar la demanda en cuestión. Específicamente, le ordenó al Sr. Cestero Aguilar permitir la entrada a su apartamento del personal que designe la administración para realizar la reparación. Asimismo, indicó que los gastos de ese trabajo serían sufragados por el Consejo de Titulares del Condominio. No obstante, aclaró que esta última determinación no es concluyente en cuanto a la controversia

---

[3] En una de las cartas remitidas al señor Hernán Cestero Aguilar, la administración del Condominio Plaza del Mar hizo referencia a un incidente en donde los pedazos de metal de la baranda en cuestión cayeron al área de estacionamiento del edificio. Íd.

[4] Carta de 29 de febrero de 2008, Apéndice del recurso de certiorari, págs. 164-165.

[5] Íd.

sobre quién es el responsable legal de asumir los costos de reparación de la barandilla del balcón.[6]

Conforme a la citada orden, la administración reparó la baranda afectada. El costo de esa labor ascendió a $3,950. Mediante carta fechada el 14 de noviembre de 2008, la administración del Condominio le informó al recurrido que le facturaría a su cuenta de mantenimiento la suma de $6,537.50 correspondiente a los costos de la reparación de la barandilla y a los gastos legales incurridos para lograr acceso a su apartamento.[7]

Mientras tanto, y previo al envío de la citada carta, el recurrido presentó una querella ante DACo. En lo pertinente a la controversia que nos ocupa, éste alegó y cuestionó el requerimiento por escrito que le hiciera la Junta para asumir los gastos de la reparación de la baranda averiada.[8]

El 1 de diciembre de 2008, DACo celebró la vista administrativa. Durante la audiencia, la Junta argumentó que su negativa a sufragar los costos de reparación de la baranda afectada se sustentaba en un acuerdo alcanzado por los titulares en una reunión del Consejo de Titulares llevada a cabo en octubre de 2005. Específicamente, indicó que en la referida asamblea una mayoría de los condóminos

---

[6] Sentencia de 3 de octubre de 2008, Apéndice del recurso de *certiorari*, págs. 111-114.

[7] El desglose de la factura fue el siguiente: $3,950 por concepto de la reparación de la baranda; $2,512 en honorarios de abogado; y $75 correspondientes al emplazamiento. Carta de 14 de noviembre de 2008, Apéndice del recurso de *certiorari*, pág. 115.

[8] Querella de 4 de septiembre de 2008, Apéndice del recurso de *certiorari*, págs. 122-125.

pactaron que el mantenimiento y reemplazo de las barandas de los balcones de los apartamentos recaía en cada uno de los propietarios.[9] Asimismo, señaló que tal convenio fue incorporado en el Art. XVI, Sec. 21(g), del nuevo reglamento del Condominio, el cual fue aprobado en agosto de 2008.[10]

Examinada la prueba presentada, DACo concluyó que la baranda ubicada en el balcón de un apartamento es un elemento común del condominio en virtud del Art. 11 de la Ley de Condominios, 31 L.P.R.A. 1291i. En su análisis, razonó que ese elemento es indispensable para el disfrute del apartamento. Asimismo, señaló que la baranda formaba parte de la fachada del condominio al estar fijada al piso y las paredes maestras del edificio, y ser parte del diseño arquitectónico exterior del edificio, según definido en el Art. 15 de la Ley de Condominios, 31 L.P.R.A. sec. 1291m. Por tales motivos, resolvió que la Junta de Directores del Condominio tenía la obligación de corregir cualquier defecto que presentara la barandilla del balcón del apartamento del recurrido, a tenor con lo establecido en el Art. 38-D(g) de la Ley de Condominios, 31 L.P.R.A. sec. 1293b-4.

En cuanto al acuerdo alcanzado por los titulares para asumir los costos de mantenimiento de las barandas de sus respectivos balcones y la subsiguiente enmienda al

---

[9] Resolución de DACo de 4 de diciembre de 2008, Determinación de Hecho 11, Apéndice del recurso de *certiorari*, pág. 131.

[10] Íd.

reglamento del Condominio, DACo resolvió que ambas actuaciones eran nulas porque no fueron aprobadas por unanimidad, sino por una mayoría simple de votos. La agencia particularizó que cualquier decisión que afectara la naturaleza comunal de un elemento del edificio, requería la unanimidad de los titulares. Toda vez que los acuerdos adoptados en el presente caso implican una modificación al carácter comunal de las barandillas de los balcones, DACo concluyó que era necesario el voto unánime de los titulares.

La Junta, inconforme, recurrió ante el Tribunal de Apelaciones. El recurso presentado únicamente cuestionó la determinación de la agencia en cuanto al requerimiento de unanimidad de los titulares para validar el acuerdo de traspaso del mantenimiento de las barandas de los balcones de los apartamentos. Mediante sentencia emitida el 17 de julio de 2009, el foro apelativo intermedio confirmó la resolución impugnada por los mismos fundamentos esbozados por DACo.

Insatisfecha, la peticionaria presentó ante este Foro el recurso de *certiorari* de epígrafe en donde nos plantea los errores siguientes:

> **Erró el Honorable Tribunal de Apelaciones al confirmar al Departamento de Asuntos del Consumidor al determinar que el acuerdo adoptado por el Consejo de Titulares en la Asamblea Extraordinaria, en cuanto a la responsabilidad de cada titular en dar mantenimiento y reemplazar las barandas de sus respectivos apartamentos no cumplió con el requisito de unanimidad de los titulares.**

> **Erró el Honorable Tribunal de Apelaciones al determinar que la enmienda al reglamento del Condominio Plaza del Mar es nula porque requería unanimidad y no mayoría simple por la naturaleza del acuerdo incorporado sobre el reemplazo y mantenimiento de las barandas.**

> **Erró el Departamento de Asuntos del Consumidor al determinar que los procedimientos llevados en la Asamblea no fueron conforme a derecho sin contar con prueba en el expediente para apoyar su determinación.**

Examinado el recurso, ordenamos expedir el mandamiento de *certiorari* en el caso de autos. Posteriormente, le concedimos un término de diez días a la peticionaria y recurrida para que presentaran sus respectivos alegatos. La peticionaria compareció oportunamente; sin embargo, la recurrida falló en presentar su alegato en oposición, por lo que el caso quedó sometido sin su comparecencia. Así, pues, pasamos a resolver la controversia que nos ocupa.

II

A

La Ley Núm. 103 de 5 de abril de 2003, según enmendada, conocida como Ley de Condominios, 31 L.P.R.A. sec. 1291 *et seq.*, regula el régimen de propiedad horizontal en Puerto Rico. El mencionado estatuto establece unos criterios que permiten viabilizar la propiedad individual sobre determinados espacios que componen un edificio.[11] En particular, procura que los propietarios de un apartamento obtengan el pleno disfrute de su propiedad, así como de los elementos comunes del

---

[11] Art. 1-A, Ley de Condominios, Art. 1-A, 31 L.P.R.A. sec. 1291, Historial.

edificio que sirven igualmente al resto de los titulares individuales.[12]   Ello recoge la esencia de la horizontalidad en nuestro ordenamiento jurídico, a saber: "la coexistencia de diversos pisos de dominio exclusivo con el condominio forzoso e inescapable de elementos comunes". Asoc. C. Quadrangle Med. Ctr. v. Ramírez, 154 D.P.R. 699, 707 (2001).

Así, el régimen de propiedad horizontal entrelaza dos formas independientes de propiedad; es decir, reúne en un solo inmueble la propiedad privativa sobre el piso o apartamento y la copropiedad sobre los elementos comunes, siendo esta última accesoria a la propiedad sobre espacios privados.[13]  En ese sentido, se ha pautado que dentro del régimen propietario de la horizontalidad, los bienes comunes existen con el fin de servir para el disfrute de lo privado. Rivera Rodríguez v. Junta Dir. I y II, 173 D.P.R. 475 (2008).  Por tal motivo, esos elementos comunes se mantienen en indivisión forzosa. Íd.  Véase, además, Art. 13, Ley de Condominios, 31 L.P.R.A. sec. 1291k.

Ahora bien, este requerimiento legal de indivisión forzosa no implica necesariamente que todos los elementos comunes sean idénticos en cuanto a su naturaleza y, por ende, reciban el mismo tratamiento dentro del régimen.  Por el contrario, la propia Ley de Condominios hace una

---

[12] Íd.

[13] Véase M. Pons González y M.A. del Arco Torres, Régimen jurídico de la propiedad horizontal: doctrina científica y jurisprudencia, legislación, formularios, 6ta ed., Granada, Ed. Comares, 1995, págs. 167-168.

distinción entre aquellos elementos no sujetos a propiedad individual y aquellos que pueden ser objeto de una conversión y transferencia para beneficio de uno o varios titulares. A esos efectos, el Art. 11 de la Ley de Condominios, 31 L.P.R.A. sec. 1291i, categoriza los elementos comunes de la forma siguiente:

Elementos comunes generales del inmueble

Los elementos comunes del inmueble son los siguientes:

(a) **Se consideran elementos comunes generales necesarios, no susceptibles de propiedad individual por los titulares y sujetos a un régimen de indivisión forzosa los siguientes:**

(1) El vuelo, entendido éste como el derecho a sobre elevar. Excepto lo dispuesto en la sec. 1291*l*-1 [Art. 14A de la Ley], el cierre o techado de patios, terrazas o áreas abiertas, así como la construcción de nuevos pisos sobre el techo y sobre o debajo del terreno requerirá, siempre que tales obras no estén contempladas en los planos sometidos con la escritura de constitución de régimen, el consentimiento unánime de los titulares; disponiéndose que este requerimiento no aplicará al cierre o techado de patios, terrazas o áreas abiertas ubicados en el suelo o planta baja (a nivel del terreno) del inmueble y destinados para uso exclusivo de determinados apartamientos constituidos en régimen previo al 5 de abril de 2003.

(2) Los cimientos, paredes maestras y de carga, techos, galerías, escaleras y vías de entrada y salida o de comunicación.

(3) Los locales para instalaciones de servicios centrales, como electricidad, luz, gas, agua fría y caliente, refrigeración, cisternas, tanques y bombas de agua, y demás similares que sean indispensables para el adecuado disfrute de los apartamientos, salvaguardando que estos elementos no se ubiquen dentro de los apartamientos o locales privados.

(4) Los ascensores, cuando éstos sean necesarios para el adecuado disfrute de los apartamientos.

(5) Las áreas verdes y los árboles requeridos por las instrumentalidades o dependencias de] Estado Libre Asociado de Puerto Rico.

(6) Cualquier otro elemento que fuere indispensable para el adecuado disfrute de los apartamientos en el inmueble.

Cualquier pacto que transfiera la titularidad, posesión o control de estos elementos a otra persona natural o jurídica distinta del Consejo de Titulares será nulo.

(b) **Se consideran elementos comunes generales, salvo disposición o estipulación en contrario, los siguientes:**

(1) El terreno, los sótanos, azoteas, patios y jardines.

(2) Los locales destinados a alojamiento de porteros o encargados.

(3) Las áreas destinadas a estacionamiento.

(4) Las áreas recreativas que excedan lo requerido por la reglamentación urbana o por las autoridades competentes.(Énfasis suplido.) 31 L.P.R.A. sec. 1291i.

Una lectura del texto antes citado, así como de la totalidad de la Ley de Condominios, refleja la existencia de tres grandes grupos dentro de los cuales se clasifican los elementos comunes; a saber, (1) necesarios o voluntarios; (2) generales o limitados; y (3) procomunales.[14] El primer grupo –necesarios o voluntarios– categoriza los elementos comunes según su indispensabilidad para el adecuado disfrute de las unidades privadas. Mientras tanto, en el segundo grupo –generales o limitados– se distinguen los elementos en función de las personas que

---

[14] Véanse: Arts. 11, 11A y 12 de la Ley de Condominios, 31 L.P.R.A. secs. 1291i, 1291i-1 y 1291j; M.J. Godreau, El condominio: el régimen de propiedad horizontal en Puerto Rico, San Juan, Ed. Dictum, 1992, págs. 83-91.

tengan derecho al uso y disfrute de determinadas áreas comunes.

En lo pertinente al caso que nos ocupa, se consideran necesarios aquellos elementos comunes **sin los cuales resultaría inasequible el adecuado disfrute de los apartamentos.**[15] Esto incluye aquellos necesarios para lograr la seguridad, conservación o existencia del edificio. Brown III v. J.D. Cond. Playa Grande, 154 D.P.R. 225, 233 (2001); Arce v. Caribbean Home Const. Corp., 108 D.P.R. 225 (1978). Consecuentemente, éstos tienen que ser reservados para el uso de la totalidad de los condóminos, por lo que no son susceptibles de enajenación o propiedad exclusiva de alguno o varios titulares. Íd.

En su contraparte, los voluntarios son aquellos elementos que no son imprescindibles para el adecuado disfrute de la propiedad individual. Esa característica permite que las áreas así categorizadas sean atribuidas a uno o varios titulares en específico.[16] La adjudicación de los referidos elementos comunes podrá efectuarse en la escritura matriz del condominio o mediante consentimiento unánime de todos los titulares cuando la transferencia o conversión ocurra luego de constituido el régimen. Art. 11, Ley de Condominios, 31 L.P.R.A. sec. 1291i. Véase, además, Brown III v. J.D. Cond. Playa Grande, supra.

---

[15] Godreau, op.cit., pág. 83.

[16] Íd.

Por otro lado, los elementos comunes generales son aquellos destinados al uso de todos los condóminos.[17] Mientras tanto, los limitados son aquellas áreas cuyo disfrute y aprovechamiento se restringe a ciertos titulares con exclusión de los demás.[18] La conversión de un elemento común general a uno limitado procede mediante acuerdo unánime de todos los titulares del edificio. Art. 12 de la Ley de Condominios, 31 L.P.R.A. sec. 1291j. En ausencia de ese acuerdo o de una designación a esos efectos en la escritura matriz del inmueble, los elementos comunes se considerarán generales.

La obligación de reparar, mantener y conservar los elementos comunes generales del edificio recae proporcionalmente en todos los titulares. Art. 39, Ley de Condominios, 31 L.P.R.A. sec. 1293c. Ese deber legal se cumple mediante el pago de la cuota de mantenimiento fijada a cada uno de los propietarios. Así, pues, la cuota de mantenimiento está revestida de un alto grado de importancia dentro del régimen de horizontalidad. Ello se debe a que la referida aportación persigue garantizar el buen funcionamiento del régimen mediante al lograr preservar los elementos comunes y facilitar su uso por parte de los condóminos. D.A.Co. v. Cond. Castillo del Mar, 174 D.P.R. 967 (2008); Asoc. C. Quadrangle Med. Ctr. v.

---

[17] Godreau, op. cit., págs. 86-87; E. Vázquez Bote, Tratado teórico, práctico y crítico de derecho privado puertorriqueño, San Juan, Ed. Butterworth, 1993, Vol. VIII, pág. 158.

[18] Íd.

Ramírez, supra, pág. 708; Maldonado v. Consejo de Titulares, 111 D.P.R. 427, 430 (1981).

Ahora bien, la carga de mantener los elementos comunes limitados le corresponde únicamente a los titulares que tengan el uso exclusivo de tales áreas. A esos efectos, el Art. 13 de la Ley de Condominios, *supra*, señala que "lo relativo [al mantenimiento de] los elementos comunes limitados corresponde a los titulares de los apartamientos a los que fueron destinados los mismos". Véase Art. 39, Ley de Condominios, *supra*; M.J. Godreau, El condominio: el régimen de propiedad horizontal en Puerto Rico, San Juan, Ed. Dictum, 1992, pág. 88. En esa línea, la ley especifica que cuando los titulares "no realicen las obras de mantenimiento de sus respectivos elementos comunes limitados y con ello se perjudiquen el inmueble o los restantes titulares, la Junta de Directores podrá realizarlas a costa de los titulares a quienes se destinaron los referidos elementos". Art. 13, Ley de Condominios, *supra*.

B

El citado Art. 11 de la Ley de Condominios, *supra*, especifica cuáles elementos son necesarios y cuáles son voluntarios. En cuanto a los elementos comunes necesarios, el referido artículo menciona el vuelo, **los cimientos, las paredes maestras y de carga**, los techos y ascensores, entre otros. 31 L.P.R.A. sec. 1291i(a)(1). Sin embargo, esta lista no es taxativa. Brown III v. J.D. Cond. Playa Grande,

supra.  A esos efectos, el inciso (a)(1)(6) del Art. 11, *supra*, postula que también se considerará un elemento común necesario cualquier otro "que fuere indispensable para el adecuado disfrute de los apartamientos en el inmueble". 31 L.P.R.A. sec. 1291i(a)(1)(6).  Ello significa que los elementos comunes necesarios enumerados en el estatuto son "numerus apertus", por lo que se permite pactar o reconocer otros elementos comunes no contemplados por la ley. Brown III v. J.D. Cond. Playa Grande, supra.

Cónsono con lo anterior, en Junta Dir. Cond. Montebello v. Torres, 138 D.P.R. 150 (1995), pautamos que la fachada de un edificio constituía un elemento común necesario.  Particularmente, indicamos que "tanto **la fachada** como las demás paredes perimetrales de un edificio son consideradas como bienes de uso común **por ser racionalmente necesarias para la 'existencia, conservación, seguridad y adecuado uso y disfrute' del inmueble".** (Énfasis suplido.)  Íd., pág. 155.[19]  Añadimos que esa naturaleza común necesaria implicaba que los titulares adquirían una parte indivisa de la fachada, por lo que éstos no podían utilizarla ilimitadamente ni introducirle cambios trascendentales. Íd., pág. 156.

---

[19] Véanse, también: J.V. Fuentes Lojo, Nueva problemática legal, doctrinal y jurisprudencial sobre propiedad horizontal: apéndice de actualización a la Suma de la Propiedad por Apartamentos, Barcelona, Ed. Bosch, 1985, pág. 642 ("La consideración de una fachada como elemento común no es discutida por nadie, por ser algo esencial en el edificio mismo y formar parte de su estructura".); J.A. Rabella de Carrillo, La Propiedad Horizontal, Barcelona, Ed. Acervo, 1960, pág. 54 ("Constituyen sin duda elemento común por constituir necesariamente una unidad incluso en lo que afecta a las cuestiones de estética u ornato del edificio".)

La prohibición a los titulares de alterar la fachada unilateralmente está recogida en el Art. 15 de la Ley de Condominios, 31 L.P.R.A. sec. 1291m. En lo pertinente, el inciso (e) del citado artículo lee como sigue:

> (e) Ningún titular u ocupante podrá, sin el consentimiento de todos los titulares, cambiar la forma externa de la fachada, ni decorar las paredes, puertas o ventanas exteriores con colores o tonalidades distintas a las del conjunto. Se entiende por fachada el diseño del conjunto arquitectónico y estético exterior del edificio, según se desprende de los documentos constitutivos del condominio.

Aun cuando la Ley de Condominios menciona que las ventanas, puertas, rejas u ornamentos forman parte de la fachada[20], el estatuto no es preciso en cuanto a la totalidad de los elementos que constituyen la fachada del edificio. Ante tal laguna, tanto la jurisprudencia como la glosa han interpretado y descifrado algunos de los componentes que la conforman. En lo que concierne al caso que nos ocupa, el balcón de los apartamentos ha sido reconocido como uno de esos elementos de la fachada afecto a la prohibición de modificación unilateral. Junta Dir. Cond. Montebello v. Torres, supra, pág. 157.[21] Esto se debe a que el balcón "constituye una parte importante del diseño arquitectónico y la estética de un edificio". Íd.

Ahora bien, existe un elemento específico en el balcón cuya naturaleza amerita ser atendida con especial detenimiento: las rejas o barandas. Una de sus funciones

---

[20] Art. 15, Ley de Condominios, 31 L.P.R.A. sec. 1291m.

[21] Véase, además, A.R. Palmiero, Tratado de la Propiedad Horizontal, Buenos Aires, Ed. Depalma, 1974, pág. 238.

obvias es fijar los límites del balcón.  No obstante, éstas también cumplen el cometido de brindar seguridad y protección a los titulares y visitantes del edificio.  En ausencia de ellas, existe un riesgo claro y palpable de que ocurra un accidente tal como la caída de una persona al vacío, entre otras.  Esto hace necesario que las barandas o rejas en los balcones se encuentren ancladas a las paredes maestras del edificio y al suelo que sirve de techo al piso inferior.  Por lo tanto, pasan a formar algo íntegramente unido a la fachada.  Las mencionadas características tornan las rejas o barandas de los balcones en un elemento común necesario.

Acorde con esta discusión, el arquitecto español José Mitjavila, al analizar el muro de fachada como elemento común de un edificio sujeto al régimen de propiedad horizontal, expone que cualquier reparación que sea necesaria en ella debe correr a cargo de la comunidad. Ello incluye la restauración o arreglo de las barandas o rejas del balcón.  Así, el arquitecto particulariza que

> si algún copropietario observara cierto **desperfecto en el trozo de fachada correspondiente a su piso, debido a la acción del tiempo, tal como** algún desconchado de moldura, del **revoco o barandilla de balcón de obra o de hierro**, etc., **deberá dar aviso inmediatamente a la comunidad para su reparación por cuenta de todos**, y no actuará nunca por su propia decisión buscando directamente el personal para el arreglo. (Énfasis suplido.) J.A. Mitjavila, La ley sobre la propiedad horizontal enjuiciada por un arquitecto: texto legal, estatutos, comentarios, Barcelona, Ed. Bosch, 1962, pág. 20.

A tenor con lo anterior, **concluimos que la reparación o sustitución de las rejas o barandas del balcón deben ser costeadas por el Consejo de Titulares, toda vez que estas constituyen un elemento común necesario para la seguridad del inmueble y el adecuado disfrute de los apartamentos.** No obstante, estamos conscientes que en algunos casos el deterioro de las mencionadas rejas o barandas se debe al descuido o negligencia de los titulares del piso. Ante tales circunstancias, resultaría injusto cargarles a todos los titulares el costo de reparación o sustitución de éstas. Consecuentemente, **resolvemos que cuando obras de reparación sean necesarias por el abandono, falta de diligencia o alguna actuación intencional del propietario del piso o local, los gastos incurridos deberán ser asumidos por el referido titular.**

III

Los primeros dos señalamientos de error se discutirán en conjunto por estar relacionados entre sí. En esencia, la peticionaria aduce que el foro apelativo intermedio erró al resolver que el acuerdo para transferirle a los titulares el mantenimiento de las barandas de los balcones del edificio requería el voto unánime de los propietarios y que tal exigencia no se cumplió en este caso. Al así hacerlo, la Junta sostiene que durante la asamblea del 24 de octubre de 2005 se determinó unánimemente sobre la responsabilidad de cada titular en el mantenimiento y

reemplazo de las rejas de la baranda de sus respectivos apartamentos. Igualmente, aduce que dichos acuerdos fueron notificados a los condóminos sin que se presentara ninguna discrepancia o desacuerdo con el mismo, por lo que sostuvo su validez al ser adoptado y aprobado por unanimidad. Como consecuencia, la peticionaria señaló que el pacto fue incorporado al reglamento del Condominio el cual fue aprobado el 21 de agosto de 2008.

Según expusimos previamente, dentro del régimen de horizontalidad se han reconocido varios tipos de elementos comunes. La clasificación de cada uno dependerá de la función que ejerzan dentro del adecuado disfrute del inmueble y de la propiedad privada. Así, dentro de un condominio, y en lo que concierne a este caso, podemos encontrar elementos comunes necesarios y elementos comunes voluntarios. Los primeros —elementos comunes necesarios— no son susceptibles de propiedad individual o transferencia debido a su indispensabilidad para lograr el adecuado disfrute de la propiedad. Esto incluye los elementos necesarios para la seguridad del edificio y de los titulares.

Los elementos comunes voluntarios, sin embargo, no gozan del carácter de indispensable, por lo que pueden ser transferidos a propiedad privada o su disfrute puede ser limitado a un grupo determinado de titulares. Ello, siempre y cuando conste en la escritura matriz del régimen

o se haya adoptado mediante acuerdo unánime de todos los propietarios.

En el presente caso, el elemento en controversia es la baranda del balcón de uno de los apartamentos del edificio. Luego de analizar la función de la barandilla del balcón dentro del contexto del edificio a la luz de la Ley de Condominios, concluimos que ésta constituye un elemento común necesario no susceptible de ser transferido a los titulares.

Por una parte, coincidimos con el foro administrativo y el tribunal apelativo intermedio en que la baranda del balcón forma parte del diseño arquitectónico del edificio. Consecuentemente, ésta conforma parte de la fachada del condominio, la cual es considerada por sí sola como un elemento común necesario. Véase, Junta Dir. Cond. Montebello v. Torres, supra. Así pues, las rejas del balcón también gozan de la naturaleza de elemento común necesario y, por formar parte de la fachada, están sujetas a la prohibición de alteración estatuida en el Art. 15 de la Ley de Condominios, supra.

De otro lado, en la mayoría de las ocasiones las barandas delimitan el perímetro del balcón, razón por la cual se ha sostenido que éstas cumplen un propósito de seguridad. En ausencia de ellas existe un riesgo claro y palpable de que ocurra un accidente que ponga en riesgo la vida de los residentes y visitantes. Por tal motivo, las rejas están fijadas a las paredes maestras del edificio y

al suelo del balcón. En ese sentido, se reafirma el hecho de que las rejas del balcón son parte integral de la fachada. Asimismo, se concretiza su indispensabilidad para el adecuado disfrute del apartamento por evidentes razones de seguridad.

Conforme a lo indicado anteriormente, la naturaleza común necesaria de las barandas del balcón implica que éstas deben mantenerse siempre en indivisión forzosa. En otras palabras, éstas no admiten pacto en contrario en cuanto a su titularidad y naturaleza común general. Cualquier cláusula en la escritura matriz o acuerdo –aun cuando sea unánime- de los condominios que transfiera a uno o a varios de los propietarios la titularidad de las barandas o modifique la naturaleza común general de éstas, será nulo.

Así las cosas, el mantenimiento, la conservación y reparación de las rejas ubicadas en los balcones de los apartamentos, así como de los restantes elementos comunes generales del condominio, recae exclusivamente en la Junta de Directores. A esos efectos, el Art. 38-D(g) de la Ley de Condominios, 31 L.P.R.A. sec. 1293b-4(g), dispone que la Junta tendrá el deber de "atender a la conservación del inmueble y **disponer las reparaciones ordinarias** y en cuanto a las extraordinarias, adoptar las medidas necesarias dando inmediata cuenta al Consejo". (Énfasis suplido.) Los costos incurridos por la Junta serán sufragados con los fondos recolectados por concepto de las cuotas de

mantenimiento que pagan los titulares mensualmente para la conservación y administración de los elementos comunes generales del edificio. Véase, Art. 39 de la Ley de Condominios, 31 L.P.R.A. sec. 1293c. La Ley de Condominios reconoce a los titulares la facultad de realizar acuerdos relacionados con la conservación de los elementos comunes. El Art. 16 faculta a los condóminos de un inmueble adscrito al régimen de propiedad horizontal a establecer acuerdos por mayoría de titulares con relación a las obras necesarias para la conservación o seguridad del inmueble y para el uso eficaz de los elementos comunes. Sin embargo, en casos en los que se afecte o pueda afectarse de forma adversa los elementos comunes el estatuto requiere el consentimiento unánime de los titulares. Véase, Art.16 de la Ley de Condominios, 31 L.P.R.A. sec. 1291n.

A tenor con la discusión que antecede, coincidimos con el foro apelativo intermedio en que el acuerdo para transferir a los titulares el mantenimiento y reemplazo de las barandas de los balcones de sus apartamentos es nulo, aunque por fundamentos diferentes. Como hemos establecido, la baranda de los balcones es un elemento común necesario que conforma parte del conjunto arquitectónico denominado fachada. El mantenimiento y conservación de dicha área recae en la Junta de Directores. Los titulares pueden acordar que la conservación de estos elementos comunes necesarios sea por su cuenta. Sin embargo, en aquellas

situaciones relacionadas a elementos comunes necesarios que propician la seguridad del inmueble y el adecuado disfrute de los apartamentos, como lo son las barandas y rejas de los balcones u otros similares que constituyen parte de la fachada, será necesario el consentimiento unánime de los condóminos. Cualquier arreglo o intervención indebida de los titulares en estos elementos puede resultar adversa y en detrimento del régimen.

Como expusimos, en el recurso ante nuestra consideración la controversia se circunscribe a la validez del acuerdo de traspaso del mantenimiento de las barandas de los balcones de los apartamentos a los titulares. La naturaleza común necesaria de las rejas de los balcones impide que su titularidad sea transferida a los titulares o su clasificación dentro de la gama de elementos del edificio sea modificada. Igualmente, y debido a que éstos constituyen parte de la fachada del edificio y propician la seguridad del inmueble, cualquier acuerdo para conservar o reemplazar los mismos debe ser unánime. De lo contrario, el mantenimiento de estos elementos comunes necesarios recaerá siempre en la Junta de Directores del condominio con cargo a la comunidad. El examen del expediente ante nos revela claramente que el pacto en la asamblea del 2005 fue acogido por votación de 19 votos a favor y 14 votos en contra, por lo que no fue acogido unánimemente. Ante tal realidad, el acuerdo alcanzado en la asamblea es nulo y no podía incorporarse al reglamento del Condominio.

Adjudicado lo anterior, resulta innecesario entrar a discutir el tercer señalamiento de error del recurso toda vez que versa sobre la validez o nulidad de los procedimientos seguidos en la Asamblea en donde se aprobó la transferencia a los titulares del mantenimiento de las barandas del balcón. Además, cabe destacar que tal señalamiento no fue planteado oportunamente ante el Tribunal de Apelaciones.

En cuanto a este último aspecto, es doctrina reiterada que el derecho apelativo, al igual que el derecho general, es uno rogado. Pérez, Ex parte v. Depto. de la Familia, 147 D.P.R. 556 (1999): Pueblo v. Prieto Maysonet, 103 D.P.R. 102, 107 (1974). Si bien es cierto que la peticionaria presentó y discutió el error en el recurso que nos ocupa, su planteamiento no fue oportuno. La peticionaria estaba obligada a realizar el señalamiento ante el Tribunal de Apelaciones para que ellos pasaran juicio sobre esa controversia particular y posteriormente impugnarla ante este Foro de no haber estado conforme con su adjudicación.

Debemos recordar que nuestra competencia apelativa en recursos de *certiorari* se limita a revisar las sentencias o resoluciones emitidas por el Tribunal de Apelaciones.[22] En el caso de autos, la sentencia cuya revisión solicita la peticionaria no atiende la controversia planteada en el tercer error del recurso. Consecuentemente, y en ausencia

---

[22] Ley Núm. 201 de 22 de agosto de 2003, según enmendada, conocida como Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003, Art.3.002(d), 4 L.P.R.A. sec. 24s(d).

de motivos que justifiquen apartarnos de esta norma, debemos abstenernos de intervenir en ese asunto.

IV

Por los fundamentos expuestos, confirmamos la Sentencia emitida por el Tribunal de Apelaciones.


Edgardo Rivera García
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Hermán J. Cestero Aguilar | Certiorari |
| Recurrido | |
| | CC-2009-0725 |
| v. | |
| Junta de Directores del Condominio Plaza del Mar | |
| Peticionario | |

SENTENCIA

En San Juan, Puerto Rico, a 20 de diciembre de 2011.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se confirma la sentencia dictada por el Tribunal de Apelaciones en el caso de autos.

Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Presidente señor Hernández Denton emitió una Opinión Concurrente a la cual se unió la Juez Asociada señora Rodríguez Rodríguez.

Larissa Ortiz Modestti
Secretaria del Tribunal Supremo, Interina

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Hermán Cestero Aguilar
    Recurrido
     v.                    CC-2009-0725    Certiorari
Junta de Directores del
Condominio Plaza del Mar

    Peticionaria

Opinión Concurrente emitida por el Juez Presidente señor Hernández Denton a la cual se une la Juez Asociada señora Rodríguez Rodríguez.

San Juan, Puerto Rico, a 20 de diciembre de 2011.

Al igual que una mayoría de este Tribunal, entendemos que le corresponde al Consejo de Titulares del Condominio Plaza del Mar pagar por los costos de la reparación de la baranda del apartamento del Sr. Hermán J. Cestero Aguilar. Sin embargo, emitimos esta Opinión Concurrente por entender que las barandas junto con la parte externa del balcón y los demás componentes de la fachada son elementos comunes generales voluntarios. Por ende, discrepamos del argumento de la mayoría de este Tribunal de que la titularidad de las barandas, como elementos comunes generales necesarios, no pueda ser transferida.

I.

El señor Cestero Aguilar es dueño de un apartamento en el Condominio Plaza del Mar (Condominio). En noviembre de 2005, notó que la baranda del balcón de su apartamento estaba corroída por el moho y que había colapsado. Por entender que el colapso de la baranda fue ocasionado por una guindola utilizada para realizar trabajos de pintura en el Condominio, le solicitó a la Junta de Directores (Junta) que la reparara a costa del Consejo de Titulares.

En un principio, la Junta le indicó al señor Cestero Aguilar que la reparación era responsabilidad de él. Luego, le informó que, de no realizar la reparación de la baranda, la administración la repararía y le facturaría el costo. Ante la negativa del titular de reparar la baranda, por entender que era responsabilidad de la Junta, esta última acudió al Tribunal de Primera Instancia en abril de 2006. Allí, solicitó un interdicto para que se ordenara al señor Cestero Aguilar a proveer acceso al apartamento para realizar los trabajos de reparación. El TPI declaró con lugar el interdicto y ordenó al señor Cestero Aguilar a permitir la entrada a su apartamento.

Tras reparar la baranda, mediante carta fechada el 14 de noviembre de 2008, la Junta le remitió una factura de más de $6,000 al señor Cestero Aguilar por los costos de la reparación y los gastos legales incurridos. Por esto, el titular presentó una querella ante el Departamento de Asuntos del Consumidor (D.A.C.O.) y alegó que era

responsabilidad de la Junta reparar dicha baranda. Por su parte, la Junta planteó que en el 2005 los titulares habían acordado transferir la titularidad de las barandas a los dueños de los apartamentos, y con esto su mantenimiento. Además, adujo que así se había hecho constar en el reglamento aprobado en el 2008.

El D.A.C.O. determinó que la baranda del balcón era un elemento común del condominio y que era parte de la fachada, por lo que la Junta era quien tenía la obligación de repararla. Por tal razón, concluyó que el acuerdo de transferencia de titularidad de las barandas, como elementos comunes, y la enmienda al Reglamento, fueron nulos por no contar con el consentimiento unánime de los titulares. El Tribunal de Apelaciones confirmó al D.A.C.O. por los mismos fundamentos.

Así las cosas, la Junta comparece ante este Tribunal y nos solicita que revoquemos al foro apelativo intermedio por entender, principalmente, que el acuerdo adoptado por el Consejo de Titulares es válido y que, por ello, es válida una enmienda al Reglamento para incorporar que la titularidad y el mantenimiento de las barandas les corresponde a los titulares, por lo que el señor Cestero Aguilar debe saldar la deuda. Discrepamos de la mayoría de este Tribunal, que, aunque confirma al Tribunal de Apelaciones, lo hace por fundamentos distintos.

II.

La controversia ante nuestra consideración es a quién le corresponde el pago de la reparación de la baranda del apartamento del señor Cestero Aguilar. Para contestar a esta interrogante, es necesario determinar qué tipo de elemento es la baranda. Así, podremos aclarar cuáles acuerdos son permitidos para transferir, alterar o reparar las barandas. Debido a que coincidimos con la mayoría de este Tribunal en que las barandas son parte de la fachada, comenzaremos nuestra discusión analizando el tipo de elemento que es la fachada y los acuerdos a los que pueda estar sujeta.

La clasificación de los elementos que componen un inmueble sometido al régimen de propiedad horizontal responde, particularmente, a que el apartamento, y como consecuencia, la maximización de su disfrute, son el centro del régimen. Véase, <u>Rivera Rodríguez v. Junta de Directores</u>, 173 D.P.R. 475, 481 (2008); Art. 1-A de la Ley de Condominios, 31 L.P.R.A. sec. 1291. Con este propósito, la Ley Núm. 103 de 5 de abril de 2003, según enmendada, Ley de Condominios, 31 L.P.R.A. sec. 1291, *et seq.* (Ley de Condominios), clasifica los elementos que componen el régimen de propiedad horizontal en elementos comunes y privativos. A su vez, desde <u>Arce v. Caribbean Home Construction Corp.</u>, 108 D.P.R. 225 (1978), hemos establecido que los elementos comunes pueden catalogarse como necesarios o voluntarios en virtud del Art. 11 de la Ley de

Condominios, 31 L.P.R.A. 1291i. A saber, el mencionado Art. 11, *supra*, dispone que:

> (a) Se consideran elementos comunes generales necesarios, no susceptibles de propiedad individual por los titulares y sujetos a un régimen de indivisión forzosa los siguientes:
>
> > (1) El vuelo, […]
> >
> > (2) Los cimientos, paredes maestras y de carga, techos, galeras, escaleras y vías de entrada y salida o de comunicación.
> >
> > […]
> >
> > (6) **Cualquier otro elemento que fuere indispensable para el adecuado disfrute de los apartamientos en el inmueble.**
>
> Cualquier pacto que transfiera la titularidad, posesión o control de estos elementos a otra persona natural o jurídica distinta del Consejo de Titulares será nulo.
>
> (b) **Se consideran elementos comunes generales, salvo disposición o estipulación en contrario los siguientes:**
>
> > (1) El terreno, los sótanos, azoteas, patios y jardines.
> >
> > (2) Los locales destinados a alojamiento de porteros o encargados.
> >
> > (3) Las áreas destinadas a estacionamiento.
> >
> > (4) Las áreas recreativas que excedan lo requerido por la reglamentación urbana o por las autoridades competentes.
>
> **La adjudicación de las áreas o elementos comunes antes enumerados, requerirá que así se haya dispuesto en la escritura de constitución del régimen o, de realizarse la conversión y transferencia luego de constituida éste, se requerirá el consentimiento unánime de los titulares.** La transferencia deberá inscribirse en el Registro de la Propiedad, dejando constancia de

los nuevos porcentajes de participación para cada uno de los apartamientos beneficiados. (Énfasis suplido).

La diferenciación constituida entre un elemento necesario y uno voluntario se fundamenta en su indispensabilidad para el disfrute del apartamento. Aquel elemento común, cuyo uso común sea indispensable, siempre ha de caracterizarse como necesario, no susceptible de aprovechamiento independiente y sujeto a la titularidad de todos los titulares. Arce, *supra*. Por otra parte, el mismo Art. 11, *supra*, establece las facultades dispositivas de los titulares sobre los elementos comunes voluntarios mediante acuerdo por unanimidad. Es decir, permite que un elemento común se convierta a un elemento privativo, sujeto a la titularidad de uno o varios titulares, dado que su uso común no es indispensable para el disfrute del apartamento.

Al mismo tiempo, los elementos comunes se pueden clasificar en generales o limitados de acuerdo a quién posea el derecho al uso del elemento. Los generales están destinados al uso de todos los condóminos. En cambio, los limitados están reservados al uso de varios titulares con exclusión de los demás. A falta de disposición en contrario en la Escritura Matriz del inmueble, los elementos comunes se presumen generales. De esta forma, para limitar su uso, en variación a la Escritura Matriz, se necesita el consentimiento unánime de todos los titulares. Art. 12 de la Ley de Condominios, 31 L.P.R.A. sec. 1291j.

Así como la titularidad y/o el derecho al uso de un elemento común pueden recaer en uno, varios o todos los titulares, correlativamente, el mantenimiento será a cargo del dueño o del que lo use con exclusión de los demás. *Véase* Art. 39 de la Ley de Condominios, 31 L.P.R.A sec. 1293c. Cabe aclarar que, en el caso de los elementos comunes necesarios les corresponde el mantenimiento a todos los titulares a prorrata según sus cuotas de participación. Sin embargo, si un elemento común se convierte a privativo, lo que ocurre es que ese espacio se suma al área superficial del apartamento y, por lo tanto, es un elemento que no tiene que presupuestarse para propósitos del mantenimiento del inmueble. En este caso, el dueño del apartamento es el que se encarga de su mantenimiento como del resto de su apartamento. A su vez, de limitarse el uso, sin cambiar la titularidad del elemento en cuestión, los gastos de mantenimiento se prorratearán de acuerdo a las cuotas de participación de sus usuarios. *Véase* Brown III v. J.D. Cond. Playa Grande, 154 D.P.R. 225 (2001); Arce, *supra*.

De lo anterior, podemos distinguir que por unanimidad se puede cambiar la titularidad de un elemento común voluntario y se puede limitar el uso de un elemento común general. En cambio, los elementos comunes necesarios no están sujetos a ningún acuerdo que transfiera su titularidad.

Por otra parte, con relación a la fachada, el Art. 15 de la Ley de Condominios, 31 L.P.R.A. 1291m(d)-(e), establece que:

> (d) Cada titular deberá ejecutar a sus únicas expensas las obras de modificación, reparación, limpieza, seguridad y mejoras de su apartamiento, sin perturbar el uso y goce legítimo de los demás. Será deber ineludible de cada titular realizar las obras de reparación y seguridad, tan pronto sea necesario para que no se afecte la seguridad del inmueble ni su buena apariencia. Todo titular u ocupante de un apartamiento vendrá obligado a permitir en su unidad las reparaciones o trabajos de mantenimiento que exija el inmueble, permitiendo la entrada al apartamiento para su realización.

> (e) Ningún titular u ocupante podrá, sin el consentimiento de todos los titulares, cambiar la forma externa de la fachada, ni decorar las paredes, puertas o ventanas exteriores con colores o tonalidades distintas a las del conjunto. Se entiende por fachada el diseño del conjunto arquitectónico y estético exterior del edificio, según se desprende de los documentos constitutivos del condominio.

Asimismo, en Junta Dir. Cond. Montebello v. Torres, 138 D.P.R. 150, 155 (1995), dijimos que la premisa inarticulada de estas restricciones -de no alterar unilateralmente la fachada- es que las consideraciones arquitectónicas y estéticas de la fachada de un edificio son parte de los criterios principales utilizados por un titular para adquirir un apartamento en un edificio determinado. Con ello en mente, establecimos que la fachada, como conjunto arquitectónico y estético exterior del edificio, es un elemento común, sujeto a la prohibición de alteración unilateral que establece el Art. 15, *supra*. *Véase; Íd.*, pág. 156. Así, determinamos que un cambio realizado

unilateralmente por un titular que alteró la parte externa del balcón fue una violación a dicha restricción.

La Ley de Condominios, *supra*, no provee una descripción de los elementos que componen la fachada ni describe a quién corresponde la titularidad de estos elementos. Es por ello que, debemos analizar si, ya que establecimos en <u>Junta Dir. Cond.</u>, *supra*, que la fachada es un elemento común, es a su vez, necesario o voluntario.

A la luz de estos preceptos, no coincidimos con el fundamento adoptado por la mayoría de este Tribunal de que la fachada es un elemento común necesario, sujeto a la prohibición de cambiar su titularidad. Veamos.

III.

Es evidente que una parte de un apartamento puede ser, simultáneamente, una parte proporcional de la fachada de un inmueble sometido al régimen de propiedad horizontal. Es por ese concurso entre el apartamento y la fachada que existe la restricción de que un titular no pueda alterar unilateralmente esa parte pues, como consecuencia, se desfiguraría el conjunto estético y el diseño arquitéctonico del exterior del edificio.

Sin embargo, el Art. 15, *supra*, permite, y así lo hemos confirmado, que se altere la fachada si se realiza con el consentimiento unánime de todos los titulares. Bajo esas circunstancias, los propios titulares habrían acordado sacrificar uno de los criterios utilizados para adquirir el apartamento, es decir, la uniformidad del conjunto

arquitéctonico y estético exterior del edificio. Siendo así, dado que es la misma Ley de Condominios, *supra*, la que permite prestar el consentimiento para las alteraciones, ¿qué propósito tiene establecer que un elemento de la fachada no pueda ser privado? El efecto que tiene alterar la titularidad de la fachada sería el mismo, una alteración a la fachada. La diferencia es que el Art. 15, *supra*, lo permite sin expresar nada sobre la titularidad del elemento. Además, cónsono con las facultades dominicales de los titulares, solo podría transferirse por unanimidad. Con esto, debido a que establecimos mediante jurisprudencia que la fachada es un elemento común, podríamos pronunciar que estamos ante un elemento común voluntario.

Una vez más, sostenemos que el centro del régimen de la horizontalidad es el disfrute del apartamento. Por lo tanto, los elementos comunes sirven ese propósito, el aprovechamiento de la propiedad individual. Por ello, un elemento es necesario porque su uso común es indispensable para el disfrute del apartamento. Así, por ejemplo, es indispensable la vía de acceso al inmueble, pues, de lo contrario, el titular no podría entrar y llegar a su apartamento. En cambio, los elementos voluntarios, aunque su uso puede ser común, al no ser indispensable dicho uso, pueden privatizarse. Por ello, mediante unanimidad se puede destinar a un solo apartamento.

Como consecuencia, entendemos que la fachada, reconociendo que es uno de los criterios utilizados por los

titulares para adquirir el apartamento, debe ser un elemento común voluntario. Ello, pues por un lado, ya la propia ley permite que se altere el conjunto arquitectónico y estético, lo que afirma que ese es un criterio al que pueden renunciar todos los titulares. Asimismo, como consecuencia de que la fachada es el conjunto arquitectónico o estético exterior, es claro que su uso común responde al aspecto visual que tienen los titulares, el cual sostenemos no es un uso indispensable para el disfrute del apartamento. De serlo, la Ley de Condominios, *supra*, proscribiría cualquier alteración a la fachada.

De este modo, ya que los titulares pueden renunciar a que la fachada se altere y ya que su uso común no es indispensable, no vemos ningún obstáculo en la ley o en la jurisprudencia a que su titularidad pueda ser convertida. De hecho, ¿qué sentido tendría para los titulares que hayan aprobado por unanimidad una alteración en la fachada, mantener la titularidad sobre esa parte proporcional de la fachada que ya está desfigurada?

No obstante, la mayoría de este Tribunal ha optado por categorizar las barandas junto con cualquier elemento de la fachada como un elemento general necesario. Aunque coincidimos con que es posible un acuerdo por todos los titulares respecto a que cada titular se encargue del mantenimiento de las barandas, reiteramos que no estamos de acuerdo con que su titularidad no pueda ser transferida.

Como bien dice la Opinión mayoritaria, las barandas fijan los límites del balcón y brindan seguridad y protección a los titulares y visitantes del edificio. Por tal razón, con relación a la seguridad, es evidente que las barandas tienen un uso individual por cada titular de cada apartamento.

Así las cosas, no nos cabe duda de que las barandas de los balcones, al igual que la parte externa del balcón, forman parte de la fachada, pues su alteración desfiguraría el conjunto arquitectónico y estético del edificio. Sin embargo, el hecho de que el propio Art. 15, *supra*, permita la alteración de una parte de la fachada es suficiente para concluir que no es indispensable su uso común, por lo que no es un elemento común necesario.

En resumen, entendemos que las barandas, así como la parte externa del balcón son componentes de la fachada. Del mismo modo, sostenemos que la fachada es un elemento común voluntario, cuya titularidad puede ser transferida. No nos cabe duda que la unanimidad es el mecanismo correcto para preservar los derechos de dominio de los titulares sobre los elementos comunes. Por tal razón, cualquier cambio en la titularidad de un componente de la fachada debe ser aprobado unánimemente por todos los titulares.

En virtud de lo anterior, confirmaríamos al foro apelativo intermedio pero por los fundamentos aquí discutidos. Así, declararíamos nulo el acuerdo de cambio de titularidad del Condominio por no contar con el

consentimiento unánime de los titulares, no  porque no se admita pacto que transfiera su titularidad como expresa la mayoría de este Tribunal. Además, ordenaríamos al Consejo de Titulares a pagar por la reparación de la baranda del balcón del señor Cestero Aguilar. Por entender que este debe ser el análisis utilizado para resolver la controversia ante nos, concurrimos.


                         Federico Hernández Denton
                              Juez Presidente